MARY FERGUSON ET AL. V. JACOB HERR ET AL.*

FILED MAY 8, 1902.   No. 11,638.

Commissioner's opinion, Department No. 3.

Adoption of Children: INHERITANCE. Section 797 of title 25, chapter
57 of the General Statutes of 1873, relating to the adoption of
children, provides, in effect, that the parents, guardian or per-
son having the minor in charge, should ˙file with the probate
judge a signed and sworn statement relinquishing all right to
the custody and control of the child, and all claims for services
and wages. The person adopting was required to file a similar
statement that he freely and voluntarily adopted the child as
his own "with such limitations and conditions as shall be agreed
upon by the parties," and then, as a proviso, was added this
language: "Provided, whenever it shall be desirable, the party
or parties adopting such child may, by stipulations to that
effect in such statement, adopt such child and bestow upon him
or her equal rights, privileges, and immunities of children born
in lawful wedlock." *Held*,· That a child adopted under said
section would not inherit from the adopting parents in the
absence of an affirmative statement to that effect in the state-
ment made and filed by them with the county judge, or the use
of language which clearly indicated the intention of the foster
parents that the child should inherit.

ERROR from the district court for Richardson county.
Tried below before LETTON, J.   *Affirmed.*

*Francis Martin, Edwin Falloon* and *Clarence Gillespie*
(*Jefferson H. Broady,* on motion for rehearing), for plain-
tiffs in error.

*Reavis & Reavis, contra.*

DUFFIE, C.

February 26, 1870, Benjamin F. Ferguson and Hannah
Ferguson, his wife, by proceedings instituted before the
county judge of Richardson county, adopted Willie Duff
Martin, who was at that time two and one-half years of
age, and in custody of the poor master of Otoe county, Ne-
braska.   Hannah Ferguson was the owner of certain real
estate in Richardson county, and died intestate in the year

*Rehearing allowed.  See opinion on page 659, *post.*

1888. At the time of her death Willie Duff Martin, who had lived with the Fergusons as their adopted child, had attained the age of twenty-one years, and claimed to inherit the real estate of which his adopted mother died seized, as her only heir at law,—subject, however, to the right of curtesy in the surviving husband. In February, 1889, Willie Duff Martin, who, since his adoption, had been known as William Ferguson, conveyed to his adopted father the real estate of which his adopted mother died seized; reciting in the deed that he was a single man, and the only heir of Hannah Ferguson, deceased. Benjamin F. Ferguson, the adopted father, died in the fall of 1897, leaving a last will and testament, by which the premises in controversy in this action were devised to the plaintiffs in error. The defendants in error are the next of kin and heirs at law of Hannah Ferguson, and they brought ejectment for the premises in controversy, making the claim that Willie Duff Martin Ferguson, the adopted son, did not inherit from his adopted mother and that his deed of the premises to his foster father conveyed no title, and that the adopted father had no interest in the premises which he could devise to the plaintiffs in error.

From the foregoing statement, it will be seen that both parties claimed title from Hannah Ferguson; the plaintiffs in error asserting that Willie Duff Martin Ferguson inherited from her as her adopted son; that he conveyed to his adopted father, Benjamin F. Ferguson, from whom they take under the terms of his will; the defendants in error claiming title as the natural heirs at law of Hannah Ferguson; and the material question to be determined is whether, under the articles of adoption, and the decree of the probate court in that proceeding, Willie Duff Martin Ferguson was entitled to inherit from his foster mother, the same as a child born in lawful wedlock.

A determination of this question requires an examination of the proceedings had in the probate court relating to the adoption of Willie Duff Martin by Benjamin F. Ferguson and Hannah Ferguson, and the statute then in

force relating to the adoption of children. Section 797 of title 25, chapter 57 of the General Statutes of 1873, the statute then in force, and which we think is decisive of the question, is as follows:

"The parents, guardians, or other person or persons having lawful control or custody of any minor child, may make a statement in writing before the probate judge of the county where the person or persons desiring to adopt said child reside, that he, she or they voluntarily relinquish all right to the custody of and power and control over such child (naming him or her), and all claim and interest in or to the services and wages of such child, to the end that such child shall be fully adopted by the party or parties (naming them), desiring to adopt such child, which statement shall be signed and sworn to by the party making the same, before said probate judge, in the presence of at least two witnesses; and the person or persons desiring to adopt such child, shall also make a statement in writing, to the effect that he, she, or they freely and voluntarily adopt such child (naming him or her), as their own, with such limitations and conditions as shall be agreed upon by the parties, which said statement shall also be signed and sworn to by the parties making the same before said probate judge, in the presence of at least two witnesses: *Provided*, in all cases where such child shall be of the age of fourteen years and upward, the written consent of such child shall be necessary to the validity of such proceeding: And *Provided further*, whenever it shall be desirable, the party or parties adopting such child may, by stipulations to that effect in such statement, adopt such child, and bestow upon him or her equal rights, privileges, and immunities of children born in lawful wedlock, and such statement shall be filed with and recorded by said probate judge, in a book kept in his office for that purpose."

The statements made by the poor master of Otoe county having charge of Willie Duff Martin, and that of Benjamin F. Ferguson and Hannah Ferguson, and the decree of court entered in the case, are as follows:

"State of Nebraska, County of Richardson. In the matter of the adoption of William Duff Martin, late of Otoe county, State of Nebraska. Now comes Jacob J. Hochstetler, the poor master of the poor of Otoe county, one of which poor, the said Willie Duff Martin is, and is a county charge and in control and custody of said poor master. That said Jacob J. Hochstetler, for the said county and as such poor master, and as the custodian of the said Willie, minor child, being of the age of two years and six months, does hereby voluntarily relinquish all right of custody, power and control over such child, Willie Duff Martin, and all claim and interest in and to the services and wages of such child, to the end that such child shall be fully adopted by Benjamin F. Ferguson and Hannah his wife, who desire to adopt said child, and do agree to adopt such child, William Duff Martin, as their own, and educate, maintain and clothe such child in a good and suitable manner for such child. This statement is made under the provisions of law for the adoption of children, that the said Willie Duff Martin may be adopted by said Benjamin F. Ferguson and wife.

"JACOB J. HOCHSTETLER,
"Witnesses:        *Poor Master of Otoe Co., Neb.*"
        "THOS. B. STEVENSON.
        "M. L. HAYWARD."
[Duly verified.]

"State of Nebraska, County of Richardson. In the matter of the adoption of Willie Duff Martin, late of the county of Otoe, State of Nebraska. Now comes Benjamin F. Ferguson and Hannah, his wife, being man and wife, of said county of Richardson, do hereby aver and state, and each one of us do aver, that the said Benjamin F. Ferguson does hereby voluntarily adopt the said child, Willie Duff (Martin) Ferguson, and the said Hannah Ferguson, wife of Benjamin F. Ferguson, does voluntarily adopt the said child as and by the name of Ferguson, and we do hereby voluntarily adopt Willie Duff (Martin) Ferguson by the latter name as our own, and agree to maintain, clothe and

educate, and well to nurture in the fear of the Lord, in presence of good manners and habits until the said child arrives at the age of twenty-one years.   The child now being two years and six months old.

"Attest:                                   BENJ. F. FERGUSON.
    "THOS. B. STEVENSON.      ·      HANNAH FERGUSON."
    "M. L. HAYWARD."

[Duly verified.]

"In the matter of the adoption of Willie Duff Martin by Benjamin F. Ferguson and Hannah Ferguson.   Before L. Vandeusen, probate judge, February 26, 1870.   And now on this 26th day of February, A. D. 1870, this matter came on to be heard in open court, and it appearing to the court that Willie Duff Martin is a minor child, aged two years and six months, and is a county charge and in the custody of Jacob J. Hochstetler, poor master of the county of Otoe, in the state of Nebraska; that Benjamin F. Ferguson and Hannah Ferguson do voluntarily agree to adopt the said Willie Duff Martin by the name of Willie Duff Ferguson, as their own child, and to maintain, clothe and educate said child as though he were their own, until said child arrives at the age of twenty-one years.   And it also appearing that the said Jacob J. Hochstetler, poor master as aforesaid, is willing and desirous that said Benjamin F. Ferguson and Hannah Ferguson shall adopt said minor and have the exclusive care and control of the person of said minor and the right and duty of caring for his education and support.   Now therefore, it is ordered by the court that the said Benjamin F. Ferguson and Hannah Ferguson have from and after this date the exclusive care, custody and control of said Willie Duff Martin, and that they stand in the same relation to each other as though the said Willie Duff Martin had been born in their lawful wedlock, and that the said Willie Duff Martin have all the right of a child born of the said Benjamin and Hannah Ferguson in lawful wedlock.   And that the said Willie Duff Martin hereafter take the name of Willie Duff Ferguson.

"L. VANDEUSEN, *Probate Judge.*"

The common law made no provision for adopting children. We therefore get no light from that law to guide us in this investigation. Most of the states of the Union have enacted general laws providing for the adoption of children and making them the legal heirs of the adopting parents. Of course, the laws of these states are not uniform in substance; the laws of each more or less limiting and restricting the legal status of the adopting parent and the adopted child. The reported adjudications of these states construing the adopting statutes nearly all agree in fixing the legal status of the adopted child as follows: That it is the event of adoption that fixes, under the law authorizing the adoption, the legal status of the adopted child; and the child, by the event of adoption, becomes the legal child of the adopting parent, and stands, as to the property of the adopting parent, in the same light as a child born in lawful wedlock, save in so far as the exceptions in the statute declare otherwise. When the statute authorizes a full and complete adoption, the child adopted thereunder acquires all the legal rights and capacities, including that of inheritance, of a natural child, and is under the same duties. *Humphries v. Davis,* 100 Ind., 274, 280; *Wagner v. Varner,* 50 Ia., 532; *Barnes v. Allen,* 25 Ind., 222; *Burrage v. Briggs,* 120 Mass., 103; *Ross v. Ross,* 129 Mass., 243.

Our own statute appears to differ from that of any other state to which our attention has been called by counsel, and from a somewhat extended research on our own part, we have failed to discover any statute containing similar provisions. The best study which we have been able to give the subject leads us to believe that our statute, as it stood when this proceeding took place, contemplated two kinds of adoption,—one with all the rights of inheritance that would belong to a child by blood, and one where such right of inheritance was not conferred. It seems to contemplate that the mere fact of adoption did not of itself confer the rights and privileges of children born in lawful wedlock, but that, in order to accomplish this result,

an affirmative agreement to that effect should be made by the parties, and included in the statement required to be filed by the adopting parents. This is the view which was taken by this court in *Martin v. Long,* 53 Nebr., 694, where, in speaking on this question, it is said: "An interesting field for discussion is thus opened up, but we agree with counsel for the appellants that 'the action is dependent entirely upon the construction of the articles of adoption,' and it therefore presents no question of general law justifying an extended opinion. It can not be doubted that under the statutes it was perfectly competent for the foster parents to bestow upon the child rights of inheritance as full as if she were their own,—a child born in lawful wedlock, in the awkward phraseology of the statute. Some stress is laid upon the varying. terms of the section regarding the articles of adoption and that regarding the decree. The claim is that the child is only entitled to the right of inheritance when it is so stated in the decree. Whether the phrase 'if so stated in the decree' applies to such matters as the rights of the child or only to the custody we need not inquire, because the preceding section requires the decree to follow the articles of adoption; and it could hardly be contended that the court would be authorized by decree to confer such rights except as expressly or impliedly conferred by the articles of adoption." Among other provisions in the declaration filed by the adopting parents in that case was the following: "And we bestow upon her equal rights and privileges of children born in lawful wedlock." Regarding this provision the court said: "The foster parents, if not intending to confer. property rights, would not have employed language, the most obvious import of which, as determined by usage, relates thereto. We think that it was the intention to confer upon the child all the rights of children proper, and, in addition thereto, to secure to her in any event, upon her majority, the sum specified in the first clause." A careful reading of the opinion leads us to the conclusion that it was the opinion of the court that

under our statute the adopted child could not claim the
right of inheritance from its adopted parents in the ab-
sence of a stipulation that he might inherit, contained in
the declaration required by statute to be signed and filed
by them.   This view of the case is further strengthened
by the action of the legislature in amending this statute
in 1897.   The amendatory statute is known as chapter
94 of the Acts of the 21st General Assembly.   The ninth
section of that act is as follows:

"Unless the terms and conditions in said consent and
petition otherwise provide, said person or persons adopt-
ing, and the said minor child adopted, shall after adop-
tion, sustain toward each other the usual relation and the
adopted child shall have bestowed upon him or her equal
rights, privileges and immunities of children born in law-
ful wedlock of parent and child, and shall have all the
right and be subject to all the duties of that relation, and
the parents of said adopted child shall, after said adop-
tion, stand relieved of all parental duties toward, and all
responsibility for, the said minor child so adopted and
shall have no right over it."

One object of the amendment undoubtedly was to make
the act of adoption conclusive of the right of the adopted
child to inherit, unless, in the words of the act, "the terms
and conditions in said consent and petition otherwise pro-
vide."   This construction of the statute is in accord with
the holding in other states.   The right of adoption, being
unknown to the common law, and repugnant to its prin-
ciples, is a special power conferred by statute and is gov-
erned by the rule that such statutes must be strictly
construed.   "As against an adopted child the statute
should be strictly construed as being in derogation of the
general law of inheritance which is founded on natural
relationship and is a rule of succession according to na-
ture which has prevailed from time immemorial." *Keegan
v. Geraghty,* 101 Ill., 26; *Wallace v. Rappleye,* 103 Ill.,
229.   "Statutes, so far as they change the general course
of descent and distribution of intestate property and

ignore all merit on account of blood, should be strictly construed. *Upson v. Noble,* 35 Ohio St., 655; *In re Chambers,* 22 Pac. Rep. [Cal.], 138.

The plaintiffs in error have cited and rely on *Kofka v. Rosicky,* 41 Nebr., 328, as an authority in this case. We are unable to see any analogy between that case and the one at bar. The facts in that case and the law applicable to the facts are clearly stated in the fourth paragraph of the syllabus as follows:

"A girl about seventeen months old was given by her parents to her uncle and aunt under an agreement that they would adopt her and rear, nurture, and educate her, and that she was to be as their own child, and at their death to receive, or be left, all the property which they might own. She lived with them until they died, some ten years afterward, took their name, did not recognize or know her own father and mother in the true relation, but knew them as and called them uncle and aunt, and knew and recognized her uncle and aunt as father and mother. The uncle and aunt died possessed of real estate in the city of Omaha, the title to which they did not, either by deed or will, transfer to the child. *Held,* That there was such a part performance of the contract by the parties thereto as entitled her to a decree giving her the title to the property, by way of specific performance of the contract."

This statement shows that there was no statutory adoption, and consequently no written statement made by the foster parents containing their agreement relating to the rights of the child to inherit their estate. In the case at bar the statute was followed, and, under our construction of the statute, the right of Willie Martin Ferguson to inherit from his foster parents can be established only by pointing out an agreement to that effect in the written statement required by the statute to be filed by the adopting parties with the county judge. The question does not depend upon oral evidence to establish an agreement, and the terms thereof; but the rights of the child must be as-

certained from the written statement filed with the county judge, and produced in evidence on the trial. In the case of *Kofka v. Rosicky* the court was to examine and ascertain in the first instance whether any agreement of adoption was ever made, and then the terms of the agreement and the rights of the parties thereunder. Here the agreement is placed before us in the form of a written statement, the true construction of which determines the rights of the parties. In that case the court saw fit to specifically enforce a contract of adoption, which it found had been orally agreed on by the parties. In this, we are called on to construe the statute, and determine whether the child may inherit from its foster parents in the absence of an affirmative statement or agreement that he shall.

If we are correct in our conclusion that the right of the adopted child to inherit depends upon an affirmative statement to that effect contained in the articles of adoption, then the claim of estoppel urged by the plaintiffs in error can have no existence. The right of the child to inherit is determined by those articles, and the caste of descent of the estate of the foster parents is governed alone by the statements therein contained. If these articles provide for the descent of their estate to the adopted child, such descent will be enforced; but in the absence of such a provision all parties will be presumed to know that the adopted child can not claim such a benefit, and the fact that he has lived with his foster parents, has taken and bears their name, has conducted himself toward them as a dutiful child, and is estopped from denying that relation, will give him no greater rights or privileges than the statute creating the relation accords.

This, we believe, disposes of all the questions in the case except the statute of limitations, which was pleaded by the defendants in error. It will be borne in mind that when Hannah Ferguson died in 1888, Benjamin F. Ferguson, her husband, survived her, and took an estate by the curtesy in all her lands. The husband died in 1897,

and during his life and the existence of his tenancy the lands did not descend to the heirs, so as to give them a right of entry, or entitle them to maintain an action of ejectment. *Jackson v. Johnson,* 5 Cow. [N. Y.], 74; *Orthwein v. Thomas,* 127 Ill., 554. In the latter case cited it is held: Children inheriting from their mother real estate of which their father is tenant by the curtesy, are not entitled to possession until after his death, and the statute of limitations can not run against them in his lifetime.

We think that the district court entered the proper judgment in the case, and we recommend its affirmance.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judment of the district court is

AFFIRMED

On April 9, 1903, the following opinion was filed on rehearing:

1. **Adoption of Children:** DECREE: FORCE AND EFFECT. In rendering the decree provided for in chapter 2, title 25, Revised Statutes, 1866, governing adoption of children, the probate judge acts judicially, and such decree has all the force and effect of a judgment, being subject to collateral attack only for want of jurisdiction.

2. ——: CONSTRUCTION OF STATUTE: REQUIREMENT OF STATUTE: DECREE. The statute prescribing the procedure in the adoption of children should be liberally construed, to the end that the proceedings had thereunder, and the decree of adoption made pursuant thereto, may be held valid; substantial compliance with the requirements of the statute being sufficient to sustain the validity of the decree of the probate court.

3. ——: ——: ——: STATUS OF CHILD. The decree rendered by the probate court under the provisions of chapter 2, title 25, Revised Statutes, 1866, fixes the status of the child and its adoptive parents; and when such decree, by failure to prosecute error therefrom, is allowed to become final, it will, if in substantial conformity with the provisions and requirements of the statute, be conclusive upon all persons interested in the proceedings.

4. ———: ———: MODIFICATION. Under the ·provisions of section 580, chapter 1, title 16, Revised Statutes, 1866, a decree of ·adoption rendered by the probate court under chapter 2, title 25, Revised Statutes, 1866, could be reversed, vacated or modified by the district court at .the instance of anyone having an appealable interest therein.

5. ———: ———: COLLATERAL ATTACK. The decree of a probate court rendered under chapter 2, title 25, Revised Statutes, 1866, conferring upon the child full rights of inheritance from his ·adoptive parents, will not, in a collateral·proceeding, many years after its rendition, and after the death of the adoptive parents, be held void for want of jurisdiction on the ground that the statement of the adoptive parents filed in the adoption proceedings fails in specific language to bestow upon the adopted child equal rights, privileges and immunities of children born in lawful wedlock, where a fair and reasonable interpretation of such statement is consistent with the intention so to bestow such rights, and it is manifest that the probate judge so understood and construed the statement of the adoptive parents, and the parents acquiesced in· the decree throughout their lives.

KIRKPATRICK, C. .

A former opinion in this case was filed in this court May 8, 1902. (page 649, *ante*). The case is here upon ·rehearing. The defendants in error, the next ·of kin and heirs at law of Hannah Ferguson, brought· an action in ·ejectment against plaintiffs in error, devisees of Benjamin Ferguson, husband of Hannah, to recover certain premises conveyed to Benjamin by Willie Duff Martin Ferguson, who had been adopted by the Fergusons in his infancy. The court found for defandants in error.

The sole question presented for determination is whether by virtue of certain adoption proceedings had in the county court of Richardson county in 1870, Willie Duff Martin Ferguson, who was therein adopted by the Fergusons, became possessed of the right of inheritance from his adopt·ive parents, the same as a child .born in lawful wedlock. The decree rendered by the probate court so provides in express terms. It is contended by defendants in error that the decree of the probate court providing that Willie should inherit as a child born in lawful wedlock was made

without jurisdiction. This contention may the more clearly be apprehended by the following quotation made from the act governing the adoption of children in force in 1870: *"And provided further,* Whenever it shall be desirable, the party or parties adopting such child may, by stipulations to that effect in such statement, adopt such child, and bestow upon him or her equal rights, privileges and immunities of children born in lawful wedlock, and such statement shall be filed with and recorded by said probate judge, in a book kept in his office for that purpose." Revised Statutes, 1866, Code of Civil Procedure, sec. 797. The statement made by the Fergusons is as follows:

"Now comes Benjamin F. Ferguson and Hannah his wife, being man and wife, of said county of Richardson, do hereby aver and state, and each of us do aver that the said Benjamin F. Ferguson does hereby voluntarily adopt the said child Willie Duff (Martin) Ferguson, and the said Hannah Ferguson, wife of Benjamin F. Ferguson, does voluntarily adopt the said child as and by the name of Ferguson, and we do hereby voluntarily adopt Willie Duff (Martin) Ferguson, by the latter name as our own, and agree to maintain, clothe and educate and well to nurture in the fear of the Lord, in presence of good manners and habits, until the said child arrives at the age of twenty-one years, the child now being two years and six months old."

It is contended that under this statement, made in compliance with the statute referred to, and the provision of that statute above quoted, the probate court had no jurisdiction to enter a decree of adoption conferring upon Willie Duff Martin Ferguson the rights of inheritance. Upon the threshold of the inquiry thus presented, it will be desirable to dispose of two preliminary questions: Are statutes such as that under consideration to be liberally or strictly construed? and, did the probate court, in entering the decree, act judicially or ministerially?

The latter question will be first considered. It is well settled that adoption proceedings were unknown to the

common law, but many of the states of the Union have adopted statutes making provision for the adoption of children. These statutes differ from each other, many of them in material respects, and only one or two have provisions in any degree similar to our own. They may, however, be classified under two heads: First, those that provide for the making of a statement or petition before the probate judge on the part of the person having lawful charge of the child, signifying a readiness to relinquish the right to the custody of and control over the child, and a statement or petition by the person or persons desiring to adopt, signifying their willingness to adopt, and under what conditions, and setting forth other facts required by the statute. The probate court, after hearing, enters a decree on the facts thus presented, giving to the child such incidents of the status of a child born in wedlock as may be authorized under the particular law. Under the other head come those statutes providing, in substance, for a written declaration or statement, rather in the nature of a deed, and so denominated frequently, executed, attested, acknowledged and recorded in the probate court. Of this latter class, of which the Alabama statute may be cited as an instance, the function of the probate court, it is apparent, is purely and wholly ministerial, amounting to nothing further than merely taking the acknowledgment and making the record. No judicial functions are called into action. But in the first named class, there are many incidents of the procedure calculated to show that the proceedings are in a liberal sense judicial. And there can be little doubt that of such is our own. The parties appear before the court,—those having the custody of the child, the child itself, and those desiring to adopt it. Statements of the parties giving over and taking the child are required, setting forth certain facts. Notice of the hearing by publication is provided for. A hearing is clearly contemplated, and after hearing, the statute provides for the rendition of a decree by the court. Nothing, it would seem, could be more clearly and manifestly.

judicial.   The distinction between adoption under such
a procedure as that indicated, and adoption by deed would
seem to be sufficiently obvious.   In the one case the parties
appear, notice to all interested is given, a hearing is had, and
the court pronounces a judgment.   In the other, the parties
adopting make a statement, it is attested, acknowledged
and recorded, and the act of adoption is *eo instanti* com-
plete.   We think that proceedings under statutes similar
to ours are always regarded as judicial.   *Brown v. Brown,*
101 Ind., 340.   And if this proceeding was judicial, it
can, of course, not be collaterally impeached for any error,
however gross, that may have intervened between the
acquirement by the probate court of jurisdiction of parties
and subject matter, and the rendition of the decree.   This,
is will be conceded, is elementary, and citation of authori-
ties is unnecessary, unless, perhaps, it may be successfully
urged that no appeal lay from the decree of the probate
court, in which event, it may be suggested an erroneous
decree ought not to be binding.   Section 580, chapter
1, title 16, Revised Statutes, 1866, p. 496, entitled "Error
in Civil Cases," provides as follows.   "A judgment ren-
dered, or final order made by a probate court,   *   *   *   or
any other tribunal, board or officer, exercising judicial
functions, and inferior in jurisdiction to the district court,
may be reversed, vacated or modified by the district court."
It is not now, and we think, never has been the policy of
the law to deny to any party the right to review.   That
right is guaranteed by the constitution.   The section from
the statute in force in 1870, just quoted, is clearly broad
enough to include the decree of adoption by the probate
court.   It is an order or decree of an officer inferior to
the district court, and exercising judicial functions.   It
provides for reversal, vacation or modification of such
order or judgment, and was amply sufficient to enable any
one dissatisfied with the decree as entered, and who had an
appealable interest, to have obtained a review thereof.

The other question suggested relates to the spirit that
should govern in the adjudication of controversies arising

under the provisions of adoption statutes, whether they shall be construed strictly, as in derogation of the common law, or liberally, as being laws humane and beneficent in their intendments and provisions, intimately involving the interests of those who by nature are helpless, and unable by reason of inherent limitations to see to the strict observance of every detail of the statutory procedure. Our examination has revealed to us that courts, called to construe these statutes, have been variously disposed, some being wholly committed to the doctrine that, being wholly statutory, and unknown to the common law, the rule that statutes in derogation thereof shall be strictly construed, applies, and that the proceedings must be tested by a rigid inspection of the requirements of the statute, no one of such requirements being less important than another. *Ex parte Clark,* 87 Cal., 638, 641. We have given this matter close consideration, and are convinced that the *Clark Case, supra,* and the other cases in which language of substantially similar import is used, proceed upon a mistaken theory. This is especially true in states like our own, where the common-law rule cited has been abrogated by specific statute. Code of Civil Procedure, sec. 1. Adoption statutes are peculiarly beneficent and altruistic. Their purpose is wholly humane. By reason of their enactment, much misery, otherwise inevitable, has been prevented, and the happiness, of a most permanent and lofty character, thereby engendered is practically incalculable. Childless parents have been provided with objects upon which to bestow their affections, and orphans have been snugly entrenched in homes of comfort and even of luxury, brought thereby under the most valuable of influences, and, perchance, saved from swelling the ranks of the vicious and criminal. These are clearly statutes in favor of which much can be said; against which, nothing. As has been aptly stated: "In cases of this kind it is not the duty of the court to bring the judicial microscope to bear upon the case, in order that every slight defect might be enlarged and magnified, so that a reason might be found for declar-

ing invalid an act consummated years before, but rather to approach the case with an inclination to uphold such acts, if it is found that there was a substantial compliance with the statute." *Nugent v. Powell*, 4 Wyo., 173. And in *Parsons v. Parsons*, 101 Wis., 76, this language occurs: "We would feel bound to repudiate the doctrine of strict construction contended for vigorously by appellant. The adoption statute is a humane provision, which looks to the interest of children primarily. That is its controlling idea and policy. Therefore, every reasonable intendment should be indulged, in case of doubt, in the line of promoting that object. Other courts have taken the same view, but, if it were otherwise, our duty to carry out an obvious legislative intent would be the same. * * * It has made, and is making, a multitude of happy homes, happy parents, happy children, and valuable members of society, and no narrow construction should be indulged in that will tend to defeat a result so obviously intended and in every way so beneficial." We incline strongly to the view as cogently set forth in the language just quoted, and believe that the sounder rule is that doubts arising under the statute should be resolved in favor of the validity of the proceedings had and the decree entered. So much for the character, scope and purpose of the act under consideration, and the rules and analogies that are to govern in its construction.

It is a necessary deduction from the foregoing that the decree of adoption is not impeachable for error, because of the axiomatic and somewhat trite reason that all courts have jurisdiction to err. The pivotal point, therefore, is, did the probate court have jurisdiction to decree that the adopted child should possess the rights of a child born in lawful wedlock? In the statement made by the adoptive parents, as directed by statute, no specific mention is made of a desire to confer upon the child the rights of inheritance, but it does not follow that such meaning may not with reasonable and sufficient certainty be gathered from the statement. We have read this statement with the

greatest care, and are unable to discover anything therein
in any way inconsistent with the decree. The qualifying
words, "as our own," when given the meaning to which
they are the most naturally susceptible, would seem
clearly to support the decree. If the child had in fact
been that of the Fergusons, its right of inheritance would
be undisputed. Was it their intention to make him "their
own?" Their statement answers in the affirmative. The
stipulation to clothe and maintain the child until he is
twenty-one years old can not be said to be in the nature of
a limitation upon the obligations otherwise intended to be
assumed. Their obligation would have been nothing less
than this, assuming that the child grew to the full stature
of manhood in the possession of his natural faculties, had
he been born to them in lawful wedlock, as the legal obli-
gation to maintain a child, unless the child becomes charg-
able to the public as a pauper, ceases as soon as the child
is of age. 2 Kent, Commentaries, *192; *Templeton v.
Stratton*, 128 Mass., 137. Nothing, therefore, was added
to or detracted from the obligation of the parents by this
statement.

Reference has been made by defendants in error to a
subsequent amendment of the adoption statute, the effect
of which has been to provide that the rights of inheritance
shall attach to the adopted child unless specific provision
has been made against such right, and it is said that this
is legislative construction to the effect that under the law
of 1870, the right of inheritance depended upon an affirma-
tive offer to confer it by the adoptive parents. Of this
amendment, it may be said that it is in line with the
more recent judicial construction of adoption statutes,
namely, that they should be held to confer all the rights
of natural children, unless a contrary intention affirma-
tively appears. But we do not think the effect of this
amendment can be to bind this court to a more rigid rule
of construction of the law of 1870 than the spirit of that
act and the usual canons of interpretation would warrant
had the act been permitted to remain as it then was; and

the question still remaining for consideration would be whether the probate court, at that time, had jurisdiction, under the particular pleadings and facts before it, to confer, by its decree, the right of inheritance.

There is much in this statute to warrant the belief that it was the legislative intent that the decree provided for should fix the status of the child. "All decrees entered in such case," it is therein said, "in conformity with the provisions and requirements of this chapter, shall be conclusive upon all the persons interested · in such proceedings or matter"; and further, "all relations of parent and child, agreeably to such stipulations and the decree of the probate court, shall attach, and such child, * * * if so stated in such decree, shall be subject to the exclusive control and custody of such parent or parents, and shall possess and enjoy all the rights * * * of children born in lawful wedlock." Revised Statutes, 1866, sec. 800, Code of Civil Procedure. In other words, there is no adoption until there has been a decree rendered, and after the rendition of the decree, the status of the parties must be determined from an inspection thereof, as in the case of other decrees, unless it is void for want of jurisdiction. It is true, that by the terms of the statute the decree is only made conclusive when in conformity with "the provisions and requirements of this chapter"; but does this mean that no adoption decree will be valid unless every provision of the statute has been strictly and literally complied with? or, rather, that the decree depends for its force and effect upon substantial compliance with the requirements of the statute? We are firmly of the conviction that judicial construction should not be carried further than the latter alternative. We doubt whether a court would, after many years had elapsed, during which all parties appeared to have been content with the event of the proceedings, hear the objection that the notice required had not been published in exact compliance with the statute; or that one of the statements had been attested by less than two wit-

nesses, or by none at all, or any other technical objection of like import. That the consent of the child, if over fourteen years, is made imperative is obviously just, as the law wisely looks upon the wishes of the child, as soon as its accumulating years permit of a realization of its own best interests, as being matter of substance. Hence the specific provision, founded in principle, that the validity of the adoption of a child of the age of fourteen years must look for its basis in the consent of the child.

But we think the act as a whole should receive a broad and liberal construction. We are not without eminent authority in saying, and the fact is abundantly fortified by considerations of justice and humanity, that the primary person interested in these proceedings is the child. *Parsons v. Parsons*, 101 Wis., 76. It was least of all capable of seeing to the strict observance of the detailed requirements of the statute, if such observance is to be made the basis of a valid decree.

After consideration, we have been led to the conclusion that the jurisdiction of the probate court to decree that the child should inherit must be determined by the single inquiry whether he was warranted in concluding that such was the intention of the adoptive parents. And if we assume that he had no power to make a decree broader than the statement of the adoptive parents, on the principle already announced, that he acted judicially, it must, we think, be conceded that he was charged with the duty and the obligation to determine the meaning of the language used. To do so was necessarily involved in his act of pronouncing the decree; and the question would then be whether the articles of adoption either expressly or impliedly conferred rights of inheritance. *Martin v. Long*, 53 Neb., 694, 698. It is, of course, obvious that the poor-master, who had the legal custody of the child, and who surrendered it for adoption, could by no act of his confer the right of inheritance. But it should not be overlooked that his consent, which was essential, might have been largely governed by the belief that such right was

proposed to be conferred. It is equally manifest that the court could not have granted by decree the right of inheritance against the express wishes or intent of the adoptive parents; but it is no less true that the discretion in him by law vested, to refuse to enter a decree and dismiss the matter, if it appeared to his satisfaction that the proceedings were not for the best interest of the child, might be largely influenced by his belief, warranted by the statement made by the adoptive parents, that they proposed to confer this right.

Referring again to the statement made by the Fergusons, we find that they offer therein voluntarily to adopt the child as their own, by the name of Ferguson, to maintain, clothe and educate him until twenty-one years old. A reading of the decree rendered by the probate judge makes it obvious, we think beyond the possibility of reasonable doubt, that the probate judge understood that he was embracing in the decree the wishes and intentions of the parties. Any other view would be in hostility with every hypothesis except that of fraud. The decree contains, first, certain findings of fact, e. g., the age of the child, thus negativing the jurisdictional requirement of the consent of an older child; the consent of the person having custody of the child; and that the Fergusons voluntarily adopt the child by their name, and "as their own child, and to maintain, clothe, and educate said child as though he were their own, until said child arrives at the age of twenty-one years," whereupon follows, as a conclusion from the foregoing premises, a judgment or decree expressly conferring rights of inheritance. It is certainly to be assumed that the Fergusons knew that this decree had been entered, and knew what it provided. Throughout their lives they appear to have been perfectly satisfied therewith. This argues strongly in favor of the conclusion that the probate judge correctly reflected their own intentions in the decree.

We are not unmindful of the rule that any doubt as to the jurisdiction of a court of limited jurisdiction which

arises from the silence of the record must be resolved against the jurisdiction. But this rule is not in conflict with the application of a rule of liberal construction brought to bear upon the statement made by the Fergusons under the statute governing adoption. If such statement can with reason be held to express the intention to confer the right of inheritance, and for the purpose of construction we see no difficulty in having recourse to the subsequent conduct of the parties with reference to the order made, then the court's jurisdiction so to decree does affirmatively appear.

The statute in force at the time seems to have been substantially complied with. As we view them, the stipulations and conditions in the statement of the Fergusons are broad enough to include the right of inheritance, and the decree of the court is in accordance therewith. The substantial conformity of the decree with the requirements of the statute makes it conclusive, and all the relations of parent and child therein enumerated must be held to attach.

It is therefore recommended that the decision heretofore rendered in this cause be overruled, and the judgment of the trial court be reversed, and the cause remanded for further proceedings.

HASTINGS and LOBINGIER, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former opinion rendered in this case is overruled, the judgment of the district court reversed and the cause remanded.

REVERSED AND REMANDED.

Second motion for rehearing filed.