# UNITED STATES OF AMERICA EX REL. MICKADIET
## v. LANE.

INDIANS; OFFICIALS; SECRETARY OF THE INTERIOR; RES JUDICATA; ESTOPPEL; EQUITY; CLOUD ON TITLE.

1. Under the act of Congress of June 25, 1910 (36 Stat. at L. 855, chap. 431, Comp. Stat. 1913, sec. 4226), authorizing the Secretary of the Interior to ascertain the legal heirs of a deceased Indian allottee of land who has died intestate, and providing that the Secretary's decision "shall be final and conclusive," the Secretary has no right to ignore the legal heirs, and decide in favor of a collateral heir or a stranger in blood, as such a decision would be arbitrary and capricious; but the statute merely clothes the Secretary with jurisdiction to identify the legal heirs, and in so doing he is as much bound by the laws of descent of the jurisdiction where the land is located as would be any other tribunal.

2. Where, after the Secretary of the Interior in a controversy between the adopted children of a deceased holder of trust patents under the act of Congress of February 8, 1887, (24 Stat. at L. 388, chap. 119, Comp. Stat. 1913, sec. 4195), and his natural heirs, found that the adoption was legal, and that the adopted children were the legal heirs of the decedent, the adopted children petitioned the Secretary, under the provisions of the acts of Congress of May 8, 1906 (34 Stat. at L. 182, chap. 2348), and June 25, 1910 (36 Stat. at L. 855, chap. 431, Comp. Stat. 1913, sec. 4226) to issue them patents in fee simple on the ground that they were competent to manage their own affairs; whereupon one of the natural heirs protested against the issuance of such patents, and also filed a motion for a review and reconsideration of the Secretary's former decision, on the ground of newly discovered evidence tending to show that the decree of adoption was void for fraud, and the Secretary decided he had jurisdiction to reconsider his former decision, and ordered the withholding of payment of funds

accrued or deposited to the credit of the adopted children since the
pendency of the motion for reconsideration; it was *held* in a suit in
equity by the adopted children against the Secretary, that the na-
tural heirs, claiming as they did under the adoptive parent, were
estopped to attack the decree of adoption which he had procured;
also that the Secretary was without jurisdiction to reopen his first
decision in the absence of any claim that it was procured by fraud,
as the act of Congress of June 25, 1910, giving him the right to de-
termine who were the legal heirs of the deceased allottee, provided
that his decision should be final and conclusive, and as there was no
statute or rule of the Department providing for a rehearing of such
cases; and that a court of equity had jurisdiction to compel the Sec-
retary to recognize and enforce his first decision, as the adopted
children were the legal heirs of the allottee, and, as such, equitable
owners of the allotments, and a readjudication of the question of
their heirship would involve them in unnecessary trouble and ex-
pense and cast a cloud upon their title.

No. 2762.  Submitted February 5, 1915.  Decided April 5, 1915.

HEARING on an appeal by the plaintiffs from a decree of the
Supreme Court of the District of Columbia, sitting as an equity
court, dismissing a bill to require the Secretary of the Interior
to cause to be paid to the plaintiffs the accumulated rents and
profits of certain Indian lands, and directing him to carry into
effect a former decision by him relating to the right of the plain-
tiffs in such lands.                                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from an order in the supreme court of the
District dismissing appellants' petition.

Section 5 of the act of February 8, 1887 (24 Stat. at L.
388, chap. 119, Comp. Stat. 1913, sec. 4195), entitled "An Act
to Provide for the Allotment of Lands in Severalty to Indians
on the Various Reservations," etc., reads in part as follows:

"That upon the approval of the allotments provided for in
this act by the Secretary of the Interior, he shall cause patents
to issue therefor in the name of the allottees, which patents
shall be of the legal effect, and declare that the United States

does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or encumbrance whatsoever: *Provided,* That the President of the United States may in any case in his discretion extend the period."

My Soul Tiebault was a member of the Winnebago tribe of Indians and the holder of so-called trust patents under the above act. In October, 1896, appellants, Julia Lamere Mickadiet, *neé* Tiebault, and Alma Lamere Tiebault, then being thirteen years and one year old respectively, Tiebault, by adoption proceedings in the county court of Thurston county, Nebraska, a court of competent jurisdiction, adopted them, and thereafter, during his lifetime, they lived with him as his children. He died in February, 1906, in said Thurston county, without issue. Thereupon, certain nephews and nieces questioned the adoption decree, and laid claim to said allotments, of which Tiebault was seised at the time of his decease. Appellants brought an action in the Federal court of Omaha, Nebraska, as heirs at law of Tiebault, and made the several nieces and nephews of Tiebault, including Harrison Tiebault and the United States, defendants, but before judgment the act of June 25, 1910 (36 Stat. at L. 855, chap. 431, Comp. Stat. 1913, sec. 4226), was passed. That act provides in part as follows:

"That when any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decision thereon shall be final and conclusive. If the Secretary of the Interior decides the heir or heirs of such decedent competent to manage

their own affairs, he shall issue to such heir or heirs a patent in fee for the allotment of such decedent; if he shall decide one or more of the heirs to be incompetent, he may, in his discretion, cause such lands to be sold," etc.

The effect of this Act being to transfer the jurisdiction of the courts to the Secretary of the Interior (*Bond* v. *United States,* 181 Fed. 613; *Pel-ata-Yakot* v. *United States,* 188 Fed. 387), the controversy was laid before the Secretary of the Interior, who, after full investigation and hearing, on January 11, 1913, ruled that said adoption decree was valid and regular in all respects, and that appellants were the legal heirs of Tiebault under the laws of the State of Nebraska. No motion for rehearing was filed, nor was the ruling challenged in any way. Thereafter, in February, May, and September, 1913, the accumulated rents and profits derived from the lands in controversy, in the custody of the superintendent and disbursing agent of the Winnebago Agency, at Winnebago, Nebraska, were duly paid over to the appellants in equal shares.

In September, 1913, the twenty-five-year trust period not having elapsed, the appellants petitioned the Secretary of the Interior, under the provisions of the act of May 8, 1906 (34 Stat. at L. 182, chap. 2348), and the act of June 25, 1910 (36 Stat. at L. 855, chap. 431, Comp. Stat. 1913, sec. 4226), to issue to them patents in fee simple, alleging that they were competent to manage their own affairs. Thereupon Harrison Tiebault, one of the parties to the proceeding resulting in the decision of the Department of January 11, 1913, that the appellants were the legal heirs of My Soul Tiebault, filed a protest against the issuance of patents in fee, and also a motion "for the review and reconsideration" of said decision, the ground of the motion being "newly discovered evidence tending to show that the alleged decree of adoption was void on the ground that it was secured by fraud." Appellants challenged the jurisdiction of the Secretary to annul said decision upon the facts stated, but the Secretary decided that he had jurisdiction to reconsider it and ascertain the lawful heirs of My Soul Tiebault. He accordingly issued orders to withhold payment of funds accrued or deposited

to the credit of My Soul Tiebault since the pendency of the motion for reconsideration.

The prayers of the bill are that the Secretary be directed to cause to be paid to the appellants the accumulated rents and profits, or to cause such rents and profits to be expended for the use and benefit of said appellants; that the Secretary be directed to carry into effect said decision of January 11, 1913, and for such further relief as appellants "may be by law entitled by reason of the premises in and to the lands in controversy and the rents, issues, and profits thereof."

*Mr. Howard Saxton, Mr. Edward F. Colladay,* and *Messrs. Brown, Baxter, & Van Dusen* for the appellants.

*Mr. Preston C. West* and *Mr. C. Edward Wright* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The allotments held by My Soul Tiebault at the time of his decease are not here questioned in any way. The sole question, therefore, with which we are confronted, is whether, under the facts above set forth, the Secretary of the Interior has jurisdiction to readjudicate the question as to who are the legal heirs of said Tiebault. Under the act of 1887 (24 Stat. at L. 388, chap. 119, Comp. Stat. 1913, sec. 4195), from which we have quoted, the heirs of a deceased allottee, "according to the laws of the State or Territory" where the land was located, succeeded to his rights, and the act of June 25, 1910 (36 Stat. at L. 855, chap. 431, Comp. Stat. 1913, sec. 4226), clothed the Secretary with exclusive jurisdiction to ascertain "the *legal* heirs of such decedent." His decision upon this question, the act specifically declares, "is final and conclusive." But that does not mean that he could arbitrarily ignore the legal heirs of a deceased allottee, and decide in favor of a collateral heir or a stranger in blood. Such a decision would be arbitrary or capricious, and not sustainable under any view of this act. See *United States ex rel.*

*Ness* v. *Fisher,* 223 U. S. 683, 691, 56 L. ed. 610, 612, 32 Sup. Ct. Rep. 356. We think, therefore, that this act merely clothed the Secretary with jurisdiction to identify the *legal* heirs of such decedent, and that in so doing he was as much bound by the laws of descent in the jurisdiction where the lands were located as would be any other tribunal.

The jurisdiction of the court in which the adoption proceedings were had is not questioned, nor is it denied that, if the decree rendered by that court is to stand, appellants are the legal heirs of My Soul Tiebault. The sole justification for the attempted reopening of the Departmental decision of January 11, 1913, according to the answer to the bill, is that a collateral heir, seventeen years after this decree of adoption (declared by sec. 800 of the statutes of Nebraska for 1895 to be "conclusive upon all persons interested in such proceedings or matter," which proceedings the supreme court of Nebraska, in *Ferguson* v. *Herr,* 64 Neb. 662, 90 N. W. 625, 94 N. W. 542, has held to be "judicial" in character), seeks to "show that the alleged decree of adoption was void on the ground that it was secured by fraud." Appellants' petition that the Secretary exercise the discretion which the statutes reposed in him, and issued to them fee simple patents to the Tiebault allotments, raised but one issue, namely, whether they were capable of managing their own affairs, and hence entitled to such patents. This petition did not, as contended by counsel for the Government, raise any issue as to their heirship. It is not contended that appellants were guilty of any fraud in procuring their adoption by Tiebault, nor could it well be, since they were infants at the time. This, therefore, is not an attempt by an alleged wrongdoer to profit by his own fraud. *Phillips* v. *Chase,* 203 Mass. 556, 30 L.R.A.(N.S.) 159, 89 N. E. 1049, 17 Ann. Cas. 544. Tiebault, by procuring the adoption decree, which was in substantial conformity with the provisions and requirements of the local statute, and for ten years thereafter recognizing its validity and receiving the benefits of the relationship thus created, was estopped to challenge it. *Ferguson* v. *Herr,* 64 Neb. 660, 90 N. W. 625, 94 N. W. 542. Nor is one claiming under him in any

better position than he would have been if living.   In *Wolf's Appeal,* 10 Sadler (Pa.) 139, 22 W. N. C. 93, 13 Atl. 760, the administrator and collateral heirs of an adoptive parent sought to have the decree of adoption set aside on the ground that certain false statements had induced it.   The court of common pleas held that such administrator and heirs could not be heard to question a decree entered at the instance of the adoptive parent, through whom they claimed.   The court said:  "When the proceedings were instituted, and the decree of adoption made, the court undoubtedly had jurisdiction of the subject-matter, to wit, the child Caroline C. Sankey, and the promotion of her welfare.   Immediately on the entry of the decree, and thereafter, she was entitled to be maintained and educated by Samuel Sankey, and on his death was entitled to inherit as his child.   Nearly nine years after the decree was entered, and more than one year after the death of her adopted father, his administrator and collateral heirs come into court and ask that this decree of adoption be vacated.   They are not here in the interest nor on behalf of the innocent subject of adoption, but decidedly against the same.   They are either strangers to the adoption proceedings, and therefore have no standing in court, or they are privies in blood or in law, and stand in the shoes of Samuel Sankey, through and under whom they claim."   An appeal was prosecuted to the supreme court of the State, where the decision was affirmed "on the opinion of the learned judge of the court below."   See also *Parsons* v. *Parsons,* 101 Wis. 76, 70 Am. St. Rep. 894, 77 N. W. 147, and 1 R. C. L. 624. If a collateral heir would have no standing to challenge such a decree in a direct proceeding, surely he ought not to be permitted to question it indirectly.   To permit him to do so would amount to an arbitrary exercise of power on the part of the Secretary, warranting the interposition of a court of equity.

But, apart from the question of the conclusiveness of the decree of adoption, we think the Secretary, under the facts stated, was without jurisdiction to reopen the decision of January 11, 1913.   There is no averment or pretense that such decision

was procured by fraud. The attack is upon a decree of adoption regularly entered by a court of competent jurisdiction in the State of Nebraska. The statute under which the Secretary is acting in terms declares that the decision of the Department identifying the heirs of a deceased allottee shall be final and conclusive. No rule of the Department providing for a rehearing within a stated time, promulgated under the authority of the act of June 25, 1910, has been called to our attention. In *United States ex rel. Knight* v. *Lane,* 228 U. S. 6, 10, 57 L. ed. 709, 711, 33 Sup. Ct. Rep. 407, it was held that a decision of the Secretary of the Interior revoking his prior approval of an adjustment between contestants, one of whom was a minor, and which was not arbitrary or capricious, but given after a hearing and in the exercise of the discretion confided to him by law, could not be reviewed by the courts. But there the application for rehearing was made within the thirty days within which such an application could be filed under the rules of the Department, and there was no provision of the statute that the original decision when rendered should be final and conclusive. Here the Department regularly having determined the identity of the legal heirs of the deceased allottee, its decision was final, and no more subject to review than would have been a similar decision of a judicial tribunal. *United States* v. *Stone,* 2 Wall. 525, 17 L. ed. 765; *Noble* v. *Union River Logging R. Co.* 147 U. S. 165, 37 L. ed. 123, 13 Sup. Ct. Rep. 271; *Lane* v. *Watts,* 234 U. S. 525, 540, 58 L. ed. 1440, 1456, 34 Sup. Ct. Rep. 965.

Since the Secretary, under the facts stated, exceeded his powers in attempting to readjudicate the question as to who are the legal heirs of My Soul Tiebault, it follows that serious, if not irreparable, injury to appellants will result. As his legal heirs, they are the equitable owners of the allotments of which he died seised, and a readjudication of the question of their heirship will not only involve them in unnecessary trouble and expense, but cast a cloud upon their title. The order will be reversed, with costs, and the cause remanded for an order direct-

ing the Secretary to recognize and enforce the Departmental decision of January 11, 1913.                                    *Reversed.*

A writ of error to the Supreme Court of the United States was allowed April 24, 1915.