200 So. 764

### RIVERS v. RIVERS.

1 Div. 132.

Supreme Court of Alabama.

March 6, 1941.

Arthur J. Kearley, of Mobile, for appellant.

Jere Austill, of Mobile, for appellee.

THOMAS, Justice.

The appeal is by a guardian ad litem of a minor. The guardian ad litem makes preliminary suggestion that there was a suit pending at the time the instant petition was filed involving the validity of the adoption proceedings that culminated in a decree of adoption after the death of the petitioner (in the adoption proceedings), Mr. Rivers.

The prior equity suit by some of the heirs of Mr. Rivers against his widow and the minor child, the cestui que trust in this petition and subject of the petition for adoption, was to secure a judicial declaration of the effect of such alleged adoption proceedings.

The instant suit is different. It is by the guardian of said minor child, seeking authority to sell her claim or interest in the lands of Mr. Rivers, deceased. The heirs of said Rivers are not parties. The petition is by Bessie Rivers, "the legal guardian of Adele Rivers, formerly Adele Bird" and states the facts, specifically describes the lands sought to be sold, avers that she has a purchaser for the claims,

rights, title and interest in said real estate "as said minor has" for the sum of $4,000, and prays for an order and decree that petitioner "as the legal guardian of said minor child might be directed to execute a conveyance of all rights, title, interest and claims which the said Adele Rivers might have in and to said lands."

The answer of the guardian ad litem exhibits the petition for adoption of said child, the consent of parent and legal guardian to adoption, and a final decree was rendered on October 22, 1936, after the death of said Mr. Rivers, which was of date of August 19, 1935.

It is thus apparent that the issues to be decided by the court in the two cases are essentially as follows: First, to determine whether said minor had an interest, legal or equitable, in the real estate of Mr. Rivers, deceased, by virtue of the abortive adoption proceedings; and, second, since the instant suit sought authority of a court of equity under its general jurisdiction to safeguard and protect the interest of minors made a ward of that court, to determine whether it is to her interest to sell her claim to the land in question when the outcome of the pending litigation challenging her right of heirship and legal adoption is doubtful.

It is the judgment of this court that the instant case is not within the terms or spirit of Section 5657 of the Code. The guardian ad litem insists that at the time the instant petition was filed by Bessie Rivers (for authority to sell the minor's claim or interest in the lands) that she had not by decree of the probate court been appointed as the legal guardian of said minor. This record shows, however, that she was so appointed as the cause proceeded and before the testimony was taken and at the time of the submission and final decree she was and had been appointed and qualified as the legal guardian of such minor. Thus was eliminated the objection made by the guardian ad litem in the determination of the instant question. That is, the court was, on submission for final decree, asked by the guardian of such minor to pass on the question of whether or not it was to the best interest of that minor to sell such claim or interest as she then had in the lands of Mr. Rivers at the averred price of $4,000.

The court of equity as guardian of minors had the jurisdiction and authority to determine whether the instant minor's claim in the lands of Mr. Rivers should be sold, whether invoked to that end by the adopted mother in that capacity, or by the natural guardian, or in her capacity as the legal guardian by appointment of the probate court when she had qualified as legal guardian before the case was submitted to the court for final decision, no objection or question as to the power or right of the court to determine the facts of best interest having intervened.

Having determined the two objections of procedural nature by the guardian ad litem, we turn to a consideration of the necessary questions of whether the attempt at adoption that eventuated in a belated decree (after petitioner's death) was of force and effect, and if not, whether it amounted to an agreement to adopt that equity will enforce, under the decisions of this court. Prince v. Prince, 194 Ala. 455, 69 So. 906; Marietta v. Faulkner, 220 Ala. 561, 126 So. 635.

The material provisions contained in the statute for adoption are: to authorize the adoption of a minor, it is required that a petition to that end be filed, investigation by the welfare department of the state be made, and consent by the minor child's parent or parents, as a condition to the decree of adoption, be had. Under the express terms of the statute, the initial decree must provide that from the date of final order of adoption (if such final order be entered) "such child, to all legal intents and purposes, will be the child of the petitioner or petitioners and that its name may be thereby changed." Cum. Supp. Michie's Alabama Code, § 9302, pp. 569, 570. This statute further provides that the final order of adoption shall not be granted until the child shall have lived for one year in the home of the petitioner and shall have been visited during the said period at least once in every three months by an agent of the state child welfare department or its duly authorized agent as provided therein. Cum.Supp.Michie's Alabama Code, § 9302, p. 570. Finally, by the express terms of statute, the child does not have the status of an adopted child and the court may revoke the initial order for good cause, either of its own motion or on the motion of the state welfare department or on the motion of the natural parent of such child. Cum.Supp.Michie's Alabama Code, § 9302, p. 570.

Under the express terms of the statute, no child can have the legal status

of an adopted child until it has lived one year in the home of the adoptive parents and until the court enters its final decree of adoption. It follows, necessarily, that during the one year period in question, the child does not, under the statute, inherit from its adoptive parents, because the terms and conditions of the statute, upon which such child becomes an adopted child, and as such entitled to inherit under the statutes of descent and distribution that obtain, have not been fulfilled.

It results, therefore, under the facts of the instant case, that while Mr. Rivers took the preliminary steps to adopt the child in question and desired so to do, the fact remains that he died before the conditions upon which he could adopt the child had been met This case is not different, however, from other cases where one has attempted to adopt a child but has failed to meet the legal requirements for such adoption and the right of inheritance. Prince v. Prince, 188 Ala. 559, 66 So. 27; Marietta v. Faulkner, 220 Ala. 561, 126 So. 635.

█ The next question to be decided is whether within the rule declared in Prince v. Prince, supra, this abortive adoption proceeding was sufficient evidence of a contract to adopt and confer the right of inheritance that a court of equity would specifically enforce. In the first decision in the Prince case [194 Ala. 455, 69 So. 907], it was decided that "equity will not enforce a mere agreement to adopt, since, for the purposes of the relationship and its legal incidents, the requirements of the statute are clearly mandatory and exclusive." In other words, under the Prince case, it was held that where the requirements of the statute for adoption are not complied with, equity will not on the theory of treating as done that which should have been done, give relief by holding the child was in equity adopted and entitled to the right of inheritance. In the last Prince case, supra, it was held that a court of equity could give relief under such abortive adoption only when a definite contract was clearly proven, not only to adopt but to adopt so as to inherit, which could be enforced by specific performance. Such also was the effect of the holding on this point in the Marietta case, supra.

In St. Vincent's Infant Asylum v. Central Wisconsin Trust Co., 189 Wis. 483, 206 N.W. 921, 922, the court said of the contention that "equity regards that as done which ought to have been done,"

" 'When the death of the foster parents prevents a literal enforcement of the contract to adopt, equity alone can render complete and adequate relief by decreeing that that be done which in equity and good conscience ought to have been done.'

"The error in so considering the case lies in overlooking the fact that adoption proceedings are wholly statutory and do not depend upon equitable principles. [Citing authorities] * * * In order to constitute one an adopted son of another, there must be judicial proceedings to that end conformably to the statute. Equity has no power to declare an adoption. The common law was and is a stranger to adoption proceedings. So, before we can declare that an adoption has taken place, we must consider what has been done, and check it up with the statutory requirements. * * *

"It is admitted by the trial court and the respondent that the law relative to adoption has not been complied with; but it is sought to cure the defect by the application of an equitable principle. Could that be done, statutes prescribing a procedure would have but a shadowy force, and we could have an adoption by consent, by private agreement, by estoppel, by fraudulent conduct, raising an estoppel, or by any of the hundred and one cases in which equity intervenes in private transactions. But we have only one way of making an adoption, and that is to follow the statute. Clear mandatory statutory proceedings do not permit of equitable repeal. The question in the present case is, Was Leo Weber legally adopted by the Elliotts? Not Should he have been adopted?"

██ The instant record discloses no such contract to adopt. The testimony of the several parties at interest on this point is without conflict. Bessie Rivers testified that before the child was born, its mother told her and Joel that if they would take care of it, she would give them the child when it was born; that her husband assented to this, saying that they wanted to adopt a child and would like to have that one. She further said that on the morning the child was born the mother told her and Joel that she gave them the child. This statement of fact is confirmed by the mother, saying that she told Joel and Bessie Rivers before the child was born that she would give them the child if they would take care of it, and

they said that they would so do. The mother further said that since the birth of the child Joel and Bessie Rivers had had possession of the child and had taken care of it. The effect of this testimony is that at the time the mother agreed to give the custody and control of the child to Joel and Bessie, she did so on the idea of custody and control, care and attention, and not one word that was in the nature of a contract to the end that the child inherit the estate of said parties. It should be said that after the child was five or six months old the mother of the child was asked to sign papers consenting to its adoption by them and her reply was that she would and did consent to adoption. In this there was no element of contract' between the mother of the child and Joel and Bessie Rivers that would bring the case within the rule announced in the Prince case, supra.

Reference is made to a remark by Mr. Rivers to the mother of the child that, "I hate to die without the baby being cared for and I want to adopt the baby before I die so the baby would get what I had," was not more than the expression of the desire in the matter. In this there was no evidence of a contract by the mother and by Mr. Rivers, in which he assumed the obligation of adopting the child in such manner that it would inherit his property. That is, when the whole testimony is considered, it was not a contract and agreement on the part of the mother and the adoptive parents within the Prince case, supra, but a mere consent to adoption without the imposition of conditions or obligations on the part of the adoptive parents. When the whole record is considered, no estoppel as against the legal heirs of Mr. Rivers is presented, having effect to deny to the heirs at law of said decedent Rivers the right to question the validity of the adoption of the child in question.

These heirs at law of Mr. Rivers acted on the assumption that the adoption proceedings did not amount to an estoppel against them. They filed the bill questioning the claim, right, title and interest of the minor to inherit from Mr. Rivers, and they have sold their respective interests to the purchasers who now offer to secure the right, title and interest of the widow and this minor by the payment of the respective sums indicated in the evidence. We have carefully considered the record and agree with the circuit court in holding that the offer of $4,000 for the claim of the minor was a fair payment for the child's alleged claim. The trial court had jurisdiction and power to act in the premises. McCreary et al. v. Billing, 176 Ala. 314, 58 So. 311, Ann.Cas. 1915A, 561.

The trial court was well supported by the evidence in the view expressed in the decree that it was to the best interest of the minor that the offer which had been made for her claim in the lands of Joel Rivers should be accepted. The tender of the above amount for the child has been made good by deposit in the bank pending the determination of this suit.

The decree of the lower court should be and it is affirmed.

Affirmed.

GARDNER, C. J., and BROWN and FOSTER, JJ., concur, but limit their concurrence to the result announced.