IN RE ADOPTION OF BARRY GENE McCAULEY, A MINOR CHILD.
ROBERT McCAULEY ET AL., APPELLEES, V. EUGENE E. STEWART ET AL., APPELLANTS.
131 N. W. 2d 174

Filed November 6, 1964. No. 35717.

Merril R. Reller and John McArthur, for appellants.

Bump & Bump, Charles A. Fisher, and John B. Henley, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, BOSLAUGH, and BROWER, JJ., and DIERKS, District Judge.

MESSMORE, J.

This is an adoption proceeding brought in the county court of Dawes County. The petition for adoption was filed on September 28, 1962. The petitioners, Eugene E. Stewart and Carolyn A. Stewart, were husband and wife and residents of Dawes County. The petition alleged that the petitioners desired to adopt Barry Gene McCauley, a minor child born in Sheridan County; that the care and custody of the minor child was given to the petitioners on April 28, 1962; and that the minor child was born of the marriage between Robert Mc-Cauley and Bonnie McCauley, both of whom executed a relinquishment of the child for adoption. The county court entered a decree of adoption finding that all per-

sons interested in the adoption of the minor child had been notified of the time and place of hearing. Robert McCauley and Bonnie McCauley, husband and wife and the natural parents of Barry Gene McCauley, appealed to the district court for Dawes County.

Petition for adoption was filed in the district court for Dawes County by Eugene E. Stewart and Carolyn A. Stewart, alleging that Barry Gene McCauley had been in the exclusive care of Eugene E. Stewart and Carolyn A. Stewart since the date of his birth; that the said minor child had been abandoned by its natural parents, the McCauleys; that on the date of birth of said minor child, the McCauleys had delivered to Dr. Bernard A. Owens an authorization to place the child in a foster home for the purpose of future adoption; that to serve the best interests of Barry Gene McCauley, the custody of said child should be retained by the petitioners; and that the natural parents of the minor child, the McCauleys, were not fit or proper persons to have the care and custody of the minor child. The prayer was for an affirmance of the adoption decree entered by the county court.

The McCauleys moved to strike from the petition all reference to the abandonment of the minor child, Barry Gene McCauley. This motion was sustained.

The McCauleys filed an answer wherein they denied that a consent and relinquishment for adoption as claimed by the petitioners had ever been acknowledged by the natural parents before a notary public; and that the decree of adoption entered by the county court was a nullity and void.

The petitioners, the Stewarts, filed a reply to the answer alleging that they were unaware of any irregularities in the consent and relinquishment given by the McCauleys.

There was a motion to strike certain allegations of the reply relating to the abandonment of the minor child by the McCauleys. This motion was sustained.

A pretrial conference was held. The parties agreed that the issues would be: (a) Have the requirements of the statutes been sufficiently satisfied to constitute a valid adoption of Barry Gene McCauley, and if so, are the McCauleys fit, suitable, and proper persons to have the care and control of this minor child? (b) If the adoption proceedings have not satisfied the requirements of the statutes on adoption, has there been an abandonment of the minor child by the natural parents thereof? And (c) if there has been no valid adoption, and if there has been no abandonment by the natural parents of the said minor child, may the court consider the question of the fitness and suitability of the natural parents to have the care, custody, and control of the child, and if so, are the natural parents fit and suitable persons to have the custody of the child?

The trial court ruled that if there was no valid adoption, and if there was no abandonment, the suitability of the natural parents to have the custody of the minor child would not be an issue in this case. The trial court further ruled that all evidence relating to the fitness and suitability of the natural parents to have the custody of the minor child be excluded, and all evidence relating to that issue be stricken from the record.

The trial court further ruled that the motion to strike all evidence dealing with the issue of abandonment be sustained; that all evidence theretofore taken relative to the issue of abandonment be stricken; and that further evidence offered on such issue of abandonment be excluded. These rulings also applied to the offer to prove certain facts regarding the issue of abandonment, the suitability or unsuitability of the natural parents, and the suitability of the adoptive parents.

The one issue then remaining before the trial court was whether or not the adoption proceedings sufficiently and substantially complied with the statutes to make the decree of adoption entered by the county court valid.

The trial court ordered that the decree of adoption

entered by the county court of Dawes County be vacated and set aside; and that Barry Gene McCauley be awarded to the natural parents of such child, Robert McCauley and Bonnie McCauley.

The petitioners, the Stewarts, filed a motion for a new trial which was overruled. The petitioners appealed.

For convenience Eugene E. Stewart and Carolyn A. Stewart will be referred to as appellants and Robert McCauley and Bonnie McCauley will be referred to as appellees. On occasion, when required, we will refer to the parties by their names, or first names, and to other witnesses by their names.

The appellants assign a number of errors, the most pertinent of which the appellants claim necessary to be determined are as follows: The trial court erred in not finding and determining that Barry Gene McCauley was abandoned and neglected by his natural parents and failing to receive evidence on this issue; the trial court erred in not receiving evidence of the unlawful and improper conduct of the McCauleys and each of them before and after the birth of Barry Gene McCauley; the trial court erred in limiting its decision on the evidence pertaining only to the question of whether or not there had been proper relinquishments executed by the McCauleys; the trial court erred in not hearing testimony of appellants as to their suitability, character, and financial circumstances as adopting parents of Barry Gene McCauley; and the trial court erred in not considering that the best interests of Barry Gene McCauley require that he not be placed in the custody and control of his natural parents.

The record discloses that Barry Gene McCauley was born on April 28, 1962.

Dr. Bernard A. Owens, physician and surgeon, testified that he practiced his profession in Hay Springs; that he owned a clinic located in a building of brick construction; that he had two aids and everything needed

for private practice; that he had known the McCauleys since April 1960; that as their doctor he attended to their needs and delivered two children born to Bonnie, one of which was Barry Gene; and that he attended Bonnie during her pregnancy with Barry Gene. The doctor further testified that when he first saw Barry Gene he was on the back seat of the McCauley car; that he took the baby into the clinic and attended to him; that the child was born in the car in front of the clinic; that he carried the child into the clinic and wrapped him in a towel; and that the clinic had towels and blankets, but no clothing for the baby. He further testified that prior to the birth of Barry Gene he had several conversations with Bonnie relative to adopting the baby out, and told her to talk over with her husband whether or not they wanted to put the baby out for adoption; that he asked Bonnie if she had talked the matter over with her husband and she said that she had and they thought it was the thing to do; that on April 7, 1962, Bonnie stated that she still planned to adopt the baby out and requested the doctor to keep this matter a secret; that Bonnie also requested that he find a home for the baby; and that he told her he could find a nice home for the baby. The doctor further testified that later he asked Bonnie if it was still their will to put the baby out for adoption and she said it was. The doctor further testified that the first time he talked to anyone other than the McCauleys concerning the placement of the child for adoption was 2 weeks before Barry Gene's birth when he talked to Eugene and Carolyn Stewart. The doctor informed the McCauleys that there would be papers to sign later relating to the adoption and they agreed to sign such papers. He received two telephone calls from Bonnie wanting to know if the papers were ready to sign, and he said he would get them ready. On May 12, 1962, Bonnie came to the doctor's office and wanted to know if the papers were ready. The doctor further testified that he told the

McCauleys the night Barry Gene was born that a lawyer would have to draw up relinquishments; that there was no lawyer in Hay Springs so he mentioned attorney Mitchell of Rushville, and that the McCauleys said that was all right; that Robert and Bonnie McCauley asked the doctor to get the release papers ready for the adoption of Barry Gene; and that this direction was made the Saturday night of the baby's birth. The doctor further testified that attorney Mitchell prepared the papers; that the doctor brought the two relinquishment papers, designated exhibits Nos. 5 and 6, back to his office; that the doctor called McCauleys on the telephone; that they came to the office on either May 14 or May 15, 1962; that the doctor placed half-inch tape over the names of the Stewarts and told the McCauleys that was because he wanted to keep secret the names of the adoptive parents; and that Robert McCauley's signature was placed on one of the relinquishments, exhibit No. 5, after he had read the instrument. Bonnie McCauley was present and signed exhibit No. 6 at the same time. The doctor mentioned that the signatures would have to be notarized. He suggested that attorney Mitchell notarize the relinquishment papers because he knew about the adoption, and stated that the McCauleys would have to go to him to have the papers notarized. The doctor further testified that the relinquishment papers contained no signatures when they were received by him through the mail; that exhibits Nos. 5 and 6 were executed at approximately the same time; and that Bonnie was present when the conversation was had with reference to securing attorney Mitchell as notary. The doctor took the relinquishment papers to attorney Mitchell, and received them back through the mail on approximately May 25, 1962, after they had been notarized. The doctor further testified that LaRea Koller was in and out of his office at the time the relinquishments were signed; and that he saw Bonnie on May 19, June 2, and August 4, 1962, and no demand was ever made for Barry

Gene nor anything said about the relinquishments.

Bonnie McCauley testified that she was the natural mother of Barry Gene McCauley; that she signed the relinquishment on May 26, 1962; that she did not at any time or place ever acknowledge exhibit No. 6, the relinquishment of Barry Gene, to be her voluntary act and deed in the presence of attorney Mitchell or any other notary public; that her husband, Robert McCauley, signed exhibit No. 5 on May 26, 1962, in the presence of Bonnie and Dr. Owens only; and that her husband could not have acknowledged exhibit No. 5 on May 19, 1962, the date that the relinquishments were alleged to have been notarized by attorney Mitchell, because he was with her all that day, and for the further reason that the signing of such relinquishments was on May 26, 1962.

There is evidence in the record to the effect that the McCauleys wanted the baby returned to them.

The undisputed evidence in this case discloses that no acknowledgement was made before a notary public at the time the relinquishments were signed by Bonnie and Robert McCauley, either by attorney Mitchell of Rushville, or by any other notary public.

As before stated, the trial court refused to allow any evidence bearing upon the issue of whether or not the natural parents or the adopting parents were suitable or unsuitable to have custody of the child, on the ground that there was no valid adoption and no abandonment and therefore such an issue was immaterial in this case, and rejected offers of proof relating to such issues.

The trial court further ruled that all evidence bearing upon the issue of abandonment was inadmissible because the petition for adoption was filed before the statutory 6-months period had elapsed.

The following statutes relating to adoption of children are pertinent to this case.

Section 43-104, R. R. S. 1943, provides in part: "No adoption shall be decreed unless the petition therefor is accompanied by written consents thereto executed

by * * * (3) both parents, if living; * * * except that consent shall not be required of any parent who shall: (a) have relinquished the child for adoption by a written instrument; (b) have abandoned the child for at least six months next preceding the filing of the adoption petition; * * *."

Section 43-106, R. R. S. 1943, provides in part: "Consents required to be given under sections 43-104 and 43-105, except under subsection (2) of section 43-104, must be signed in the presence of at least one witness and acknowledged before an officer authorized to acknowledge deeds in this state." Subsection (2) of section 43-104, R. R. S. 1943, refers to any district court in the State of Nebraska having jurisdiction of the custody of a minor child by virtue of divorce proceedings had in any district court in the State of Nebraska, a matter which is not involved in this case.

In Trowbridge v. Bisson, 153 Neb. 389, 44 N. W. 2d 810, this court said: "An acknowledgment has been defined as: 'The act by which a party who has executed an instrument * * * goes before a competent officer * * * and declares or acknowledges the same as his genuine and voluntary act and deed.' Black's Law Dictionary, (3d ed.), p. 31. See, also, Aultman & Taylor Co. v. Jenkins, 19 Neb. 209, 27 N. W. 117; * * *.

"As stated in 1 Am. Jur., Acknowledgements, § 142, p. 376: 'A grantor in an instrument of conveyance who never at any time appeared for the purpose of acknowledging the instrument is not bound in any wise by the recitals in the certificate of acknowledgment attached by a notary public. The notary is without authority or jurisdiction to attach any certificate whatever. In such a case, the jurisdiction of the officer not having been invoked, his utterance is a nullity and his certificate has no evidentiary force whatever in favor or against anyone.' See, also, Annotation, 72 A. L. R. 1302; Pereau v. Frederick, 17 Neb. 117, 22 N. W. 235."

The foregoing language would apply in the instant

case relating to the alleged relinquishment of the minor child by its natural parents.

In 2 Am. Jur. 2d, Adoption, § 43, p. 894, it is said: "A consent which fails to meet the statutory requirements cannot be given legal effect. If, for example, the consent though written and signed is not subscribed and sworn to before one authorized by law to administer an oath as required by the statute, it will be considered insufficient, * * *."

In Foley v. Carnesi, 123 Colo. 533, 232 P. 2d 186, 24 A. L. R. 2d 1123, it is said: "It is argued that in this case the evidence shows that there was no duress or fraud at the time respondent signed the consent, and that the purpose of having such a consent subscribed and sworn to is to lessen the possibility of duress or fraud. Admitting that this could be one purpose of that procedure, we still cannot say that the legislature did not intend that every consent by the natural parent to an adoption of a child should not be subscribed and sworn to for the purpose of emphasizing the seriousness and solemnity of the step being taken. It also should be emphasized that the person authorized by law to administer oaths or affirmations is a public officer, which of itself gives the transaction a more impressive setting and an atmosphere of finality."

It is quite apparent that the Legislature of this state, as did the Legislature of Colorado, made the acknowledgment of a consent or relinquishment of a minor child by the natural parent or parents a prerequisite to a valid consent for adoption.

In the case of In re Petition of Ritchie, 155 Neb. 824, 53 N. W. 2d 753, this court said: "The matter of adoption is statutory, and the manner of procedure and terms are all specifically prescribed and must be followed. Kofka v. Rosicky, 41 Neb. 328, 59 N. W. 788, 25 L. R. A. 207, 43 Am. S. R. 685. * * *

"The applicable rules are:

" 'A court of equity, in dealing with legal rights, adopts

and follows the rules of law, in all cases to which those rules are applicable, and whenever there is an explicit statute or a direct rule of law governing the case in all its circumstances, a court of equity is as much bound by it as would be a court of law.' State ex rel. Sorensen v. State Bank of Omaha, 128 Neb. 148, 258 N. W. 260. * * *

"Adoption proceedings do not depend upon equitable principles. Where the essential statutory requirements have not been met, equity cannot decree an adoption. 2 C. J. S., Adoption of Children, § 1, p. 368. See, also, St. Vincent's Infant Asylum v. Central Wisconsin Trust Co., 189 Wis. 483, 206 N. W. 921; Borner v. Larson, 70 N. D. 313, 293 N. W. 836; In re Francis, 82 Ohio App. 193, 77 N. E. 2d 289; Rivers v. Rivers, 240 Ala. 648, 200 So. 764."

In 2 Am. Jur. 2d, Adoption, § 24, p. 879, it is said: "Consent of the natural parents who have not forfeited their parental rights and duties to the adoption of their child by another lies at the foundation of most statutes of adoption, and under most statutes the consent of such parents to the adoption of their child is regarded as an essential requisite to jurisdiction on the part of the court to make an order of adoption, and the absence of consent is fatal to validity of the decree * * *."

In 2 Am. Jur. 2d, Adoption, § 9, p. 867, it is said: "The requirements of a statute which authorizes adoption by contract or deed must be substantially complied with. If the statute required that the written instrument of adoption be acknowledged and recorded, a failure to conform to this requirement invalidates the proceeding."

In 2 Am. Jur. 2d, Adoption, § 7, p. 866, it is said: "Generally speaking, adoption statutes will be strictly construed in favor of the rights of the natural parents in controversies involving termination of the relation of the parent and child, especially in those cases where it is claimed that owing to misconduct his consent to the adoption is not required. Every intendment should be

made in such case in favor of the parent's claim, and where the statute is open to construction and interpretation, it should be construed in support of the parent's natural rights."

In Dorshorst v. Dorshorst, 174 Neb. 886, 120 N. W. 2d 32, this court said: "The right to make an antenuptial contract being statutory and in derogation of the common law, the manner prescribed by statute for exercising the right is a condition upon which the right exists. * * * When an antenuptial contract is not acknowledged as required by section 30-106, R. R. S. 1943, it is void for failure to comply with a statutory condition that is essential to the existence of the right to make such a contract."

While the foregoing case deals with an antenuptial contract, the rule relating to compliance with the statutes is the same as in a case for adoption of minor children.

Under the evidence and the authorities heretofore cited, no proper acknowledgment was taken of the natural parents of the minor child, Barry Gene, as required by statute. Consequently, there were no proper relinquishments by the natural parents of such minor child to effect an adoption of their child Barry Gene. The judgment of the trial court in this respect was correct.

The appellants contend that in any event, there is an abandonment of Barry Gene McCauley by his natural parents.

The record shows that the alleged time of abandonment was not at least 6 months next preceding the filing of the petition for adoption of Barry Gene McCauley in the county court. It was stipulated by the parties that Barry Gene McCauley was born on April 28, 1962. The petition for adoption was filed in the county court of Dawes County on September 28, 1962, or exactly 5 months after the birth of Barry Gene McCauley. The petition for adoption filed in the county court alleged

nothing with reference to abandonment of this minor child, nor did the decree of adoption from the county court say anything about abandonment of this minor child. This was not an issue in the county court.

Referring to section 43-104, R. R. S. 1943, heretofore set forth in part, it provides that the abandonment must be "at least six months next preceding the filing of the adoption petition." It is apparent that this section of the statute was not complied with.

In Tiffany v. Wright, 79 Neb. 10, 112 N. W. 311, this court said: "For the beneficent purpose of providing homes for homeless infants, all of the states of this Union have enacted statutes of adoption, which are of civil and not of common law origin. These statutes are all primarily based upon the consent of the child's parent, or parents, if living and accessible, and the exceptions, which permit adoption without such consent, must clearly come within the provisions of the statutes."

In Fouts v. Carlson, 137 Neb. 402, 289 N. W. 764, this court referred to section 43-102, Comp. St. 1929, which was reenacted substantially as section 43-104, R. R. S. 1943. The court said: "The effect of the foregoing provision is to provide that complete abandonment of a child for a period of six months by the parents will warrant the adoption of such child by a person who has had the lawful custody or control of it for a like period of time without procuring a relinquishment and consent to adoption from the parents. Whether or not there has been an abandonment is a question of fact which must be determined by the evidence. It cannot be questioned that our adoption statute is primarily based on the consent of parents, if living and accessible, and an adoption without such consent must come clearly within the exception contained in the statute."

In the above-cited cases, the fact issue of abandonment was reached because the statutory period of 6 months had expired. It is clearly indicated by the above-cited language appearing in both cases that if the

statutory 6-months period had not elapsed, the abandonment exception to the requirement of consents is not available. On the issue of abandonment, the appellants must fail. The trial court did not commit prejudicial error in excluding the testimony relating to abandonment of the minor child in this case.

The appellants contend that the welfare of Barry Gene McCauley is the paramount consideration in all proceedings involving the adoption of children.

In this connection, the case of Ferguson v. Herr, 64 Neb. 649, 90 N. W. 625, is cited by the appellants. In this case Benjamin F. Ferguson and his wife Hannah, by proceedings before the county court of Richardson County, adopted Willie Duff Martin, a minor child. When he was 21 years of age, he claimed to have inherited the real estate of which his adopted mother died seized, as the sole and only heir-at-law, subject to the right of the surviving husband. On rehearing, 64 Neb. 659, 94 N. W. 542, the sole question presented for determination was whether or not, by virtue of certain adoption proceedings, Willie Duff Martin Ferguson, who had been adopted by the Fergusons, became possessed of the right of inheritance from his adoptive parents, the same as a child born in wedlock. The court said: "As we view them, the stipulations and conditions in the statement of the Fergusons are broad enough to include the right of inheritance, * * *." The welfare of the child was not involved and played no part in the determination of this case.

The appellants cite Milligan v. McLaughlin, 94 Neb. 171, 142 N. W. 675, 46 L. R. A. N. S. 1134. This was a partition action. A question of title arose in the case, the solution of which depended upon whether or not certain proceedings seeking to adopt Clarence Brother McLaughlin in the county court of Custer County were valid and effectual, or, if ineffectual, whether there was a contract of adoption which would be specifically enforced. Martin McLaughlin and his wife, the parents of

the child, filed their signed relinquishment and consent to the adoption. This court said that there was a completed contract for adoption and heirship. There was no mention of the welfare of the child in this case.

The appellants cite Jones v. State, 175 Neb. 711, 123 N. W. 2d 633. This was an action initiated by petitioners in the separate juvenile court of Douglas County, for the purpose of having the juvenile court declare John William Perry to be a neglected child pursuant to section 43-201, R. R. S. 1943. It is true that the welfare of the child is an issue in such a proceeding, but the same rules are not involved in the instant case and are not applicable to an adoption case where the statutory grounds for adoption are lacking. The above-cited cases are not applicable under the circumstances of the instant case.

In the instant case the alleged relinquishments of Barry Gene McCauley by his natural parents were invalid because of their failure to comply with the statutes as heretofore set forth. In addition, according to the statutes there was no abandonment of the minor child, Barry Gene McCauley. Consequently, the evidence relating to the suitability of the natural parents of the minor child, or the suitability of the adoptive parents was not an issue.

In Susko Adoption Case, 363 Pa. 78, 69 A. 2d 132, the court said: "Unlike custody cases, in adoption proceedings the welfare of the child is not material until either consent or abandonment as prescribed by the Adoption Act has been established. 'Under the Adoption Act the welfare of the child is weighed only after the necessary consents have already been given or forfeited. The welfare of the child, as an element in adoption proceedings, has no relation to the question of the parent's abandonment': Schwab Adoption Case, 355 Pa. 534, 50 A. 2d 504."

As stated in Oeth v. Erwin, 6 Ill. App. 2d 18, 126 N. E. 2d 526: "In adoption it is not the duty of the court

to determine if petitioners could best provide for the child. The court must first determine if statutory grounds for adoption exist * * *. Since adoption and custody are two different things, a clear and convincing case must be made to warrant adoption."

In the light of the foregoing cases, the trial court did not err in refusing to receive evidence relating to the welfare of the minor child.

Where there is no designated juvenile court as such, the district courts and county courts have concurrent jurisdiction and may act accordingly upon the evidence which affects the welfare and custody of any minor child under the age of 18 years that comes within the provisions of the statute relating to neglected and dependent children. See § 43-202, R. R. S. 1943.

A further remedy that relates to the custody of infants is by habeas corpus. See, Lung v. Frandsen, 155 Neb. 255, 51 N. W. 2d 623; Barnes v. Morash, 156 Neb. 721, 57 N. W. 2d 783; Osterholt v. Osterholt, 173 Neb. 683, 114 N. W. 2d 734. There are other cases too numerous to cite relating to the custody and welfare of a child wherein such issue was tried in habeas corpus proceedings.

In considering the record, the statutes here involved, and the authorities heretofore cited, we conclude that the judgment of the trial court should be affirmed, except that portion of the decree awarding the custody of the minor child to the natural parents.

AFFIRMED AS MODIFIED.