In re Barry Gene McCauley, an infant.
Eugene E. Stewart et al., appellants, v. Robert McCauley et al., appellees

133 N. W. 2d 921

Filed March 12, 1965. No. 35806.

Merril R. Reller and John McArthur, for appellants.

Charles A. Fisher, Charles F. Fisher, Bump & Bump, and John B. Henley, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, and BROWER, JJ., and POLLOCK and SIDNER, District Judges.

SPENCER, J.

This is an action instituted in the district court for Dawes County to bring to the attention of that court as a juvenile court the need to provide for the welfare, custody, and control of a neglected and dependent child, where the county attorney by improperly accepting employment in a civil action has made it impossible to secure the consent of the county attorney which is required by section 43-205, R. S. Supp., 1963, for the filing of a petition.

The child is the same one involved in McCauley v. Stewart, 177 Neb. 759, 131 N. W. 2d 174, in which we reversed that portion of the decree which awarded custody of the child to its natural parents. This action was filed the day that case went to trial in the district court for Dawes County. The county attorney was one of the attorneys in that case for Robert McCauley and Bonnie McCauley, the natural parents of the child. For convenience hereinafter they will be referred to as the McCauleys.

The present action was filed by Eugene E. Stewart and Carolyn A. Stewart who were the appellants in McCauley v. Stewart, *supra*. They will be referred to herein as petitioners. The petition is titled, "In the Matter of Barry Gene McCauley, An Infant." Summons was

issued for the McCauleys, Bevin B. Bump, county attorney for Dawes County, and Mabel Knapp, director of the Dawes County division of public welfare and child welfare. The county attorney will hereinafter be referred to by that title. The parties summoned will be collectively referred to as appellees. The McCauleys filed a special appearance which was sustained. The county attorney, on his own behalf and that of the director of public welfare, filed a motion to strike the petition which was also sustained. From the overruling of a motion for a new trial on both orders, the petitioners have perfected an appeal to this court.

The petition referred to the then-pending adoption case, McCauley v. Stewart, *supra*; the refusal of the county attorney to protect the interests of the child, and his association in the pending action as attorney for the McCauleys; the reasons why the child would be dependent and neglected if the McCauleys obtained custody; and a copy of the written request to the county attorney to take action or to give his consent to some suitable person to do so. The letter itemized in detail those actions of the parents, including the criminal record of the father and demands for money for said child, which made it apparent the child would be a neglected and dependent one.

The jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. The jurisdiction of the state arises out of the power that every sovereignty possesses as parens patriae to every child within its borders to determine the status and custody that will best meet its needs and wants, and residence within the county suffices even though the domicile of the parents may be in another county. See Jones v. State, 175 Neb. 711, 123 N. W. 2d 633.

The McCauleys filed a special appearance in which they state that they are nonresidents of Dawes County;

and that they were personally served with summons ·in Dawes County while in attendance on an action in Dawes County in which they were parties. Without deciding petitioners' contention that summons was not necessary for the McCauleys but merely a notice of the action because they had never had the custody of the child, we note that the trial they were attending was McCauley v. Stewart, *supra,* in which they themselves were seeking custody and control of the child involved. This case, therefore, is controlled by Miller v. Miller, 153 Neb. 890, 46 N. W. 2d 618, in which we said: "The question whether process may be served on a nonresident party may be determined by the nature of the proceeding in which process was issued and its relation to the suit which the party or witness had been attending.

"The rule that suitors from a foreign jurisdiction are exempt from service of civil process while attending court and for such reasonable time before and after as may enable them to come from and return to their homes does not extend to process in an action or proceeding involving or connected with the subject matter of the litigation during attendance upon which the nonresident suitor is served." The special appearances should have been overruled.

The motion to strike lists three reasons. First, the petition was improperly filed and did not meet the statutory requirements, and the court therefore is without jurisdiction; second, the petition and exhibits attached contain inflammatory language, conclusions of fact and law, repetitions, criminal charges, and other extraneous matters having no legitimate relation to stating a cause of action under the juvenile court act; and third, the petition was filed during the trial of another action between the same parties (McCauley v. Stewart, *supra*) for the sole purpose of harassing the opposing parties and was an attempt to transfer the custody of the minor child to the juvenile court when that court was hearing litigation of the issues in another matter with the same

parties involved. The trial court sustained the motion to strike but gave no reason for its action.

The first reason listed above is the only one that merits extended discussion. As to the other two, we merely observe that at the start of the trial in McCauley v. Stewart, *supra,* the court ruled that it would not consider the question of fitness and suitability of the natural parents to have the custody, care, and control of the child. It also overruled a motion to appoint a guardian ad litem as well as a request for an investigation of the suitability of the natural parents. The letter to the county attorney, referred to above, was placed in evidence in that case in support of the motion for an investigation. The true question, as we view the record, is whether the petition filed states facts sufficient to state a cause of action. Our answer is in the affirmative.

For the purpose of discussion, we consider the motion to strike as a general demurrer. See Lewin v. Lewin, 174 Neb. 596, 119 N. W. 2d 96, in which we said: "A motion to strike a petition from the files because the facts pleaded are insufficient is in effect a general demurrer and admits the truth of facts well pleaded."

No purpose will be served by detailing the allegations made. We merely observe that they were sufficiently descriptive and of so serious a nature as to raise a question as to the motive of the county attorney in not cooperating with the parties to give them an opportunity to prove the allegations made.

This action is an attempt to invoke the jurisdiction of the juvenile court when the conduct of the county attorney made it impossible to comply with section 43-205, R. S. Supp., 1963, and therefore prevented any action to protect the welfare of the minor child. Stated in another form, can an irresponsible parent or one possibly much worse prevent action by a juvenile court to protect the welfare of an innocent child by the mere expedient of hiring the county attorney in a civil action involving that child? The answer must be obvious. When we are

dealing with this phase of the juvenile court act, we must not overlook the fact that the act had its origin in the protection that is due the innocent or helpless. Jones v. State, 175 Neb. 711, 123 N. W. 2d 633. It was never intended that the method provided for its operation should be a trap to prevent such protection. If it can possibly be avoided, this court should not adopt a construction which would have that effect.

The juvenile court is a product of the solicitude of the law for the welfare of infants. Its powers and duties are described more or less in detail in our statutes, and because of their humanitarian and beneficient purpose, they should be liberally construed to the end that their manifest purpose may be effectuated to the fullest extent compatible with their terms. As was said in State ex rel. Miller v. Bryant, 94 Neb. 754, 144 N. W. 804, the juvenile court law did not create a new court, it merely gave a court with general common law and equity jurisdiction new and additional powers. These powers do not supersede its original jurisdiction but are supplemental to it. Section 43-205, R. S. Supp., 1963, was not intended to make the county attorney the judge with the final decision, but was intended as a check on its indiscriminate exercise by the irresponsible. Inherent in the statute is the thought that every question of a doubt would be resolved by the county attorney in favor of consent.

Section 23-1205, R. R. S. 1943, gives the district court the authority to appoint an acting county attorney in the event of absence, sickness, or disability of the county attorney. As early as Gandy v. State, 27 Neb. 707, 43 N. W. 747, the word "disability" was interpreted to cover situations where the county attorney by reason of prior employment disqualified himself to act in the new case. We question the right of the county attorney to appear herein to file a motion to dismiss. The purpose of sections 23-1205 and 23-1206, R. R. S. 1943, is the protection of the public by making certain that a county attorney's duties shall not be influenced by private in-

terests. See Ress v. Shepherd, 84 Neb. 268, 120 N. W. 1132. Section 23-1205, R. R. S. 1943, should have been invoked because of the disability of the county attorney. The petition in this case should have been construed to be a request for such relief, for it sets out in detail the disqualifications of the county attorney and his refusal to act, and is a request to the court to protect the rights of the infant. As we view this record, the district court should appoint some suitable person as acting county attorney to consider the question of filing the petition or giving consent to some suitable person to file it.

Appellees argue that the child, because it was in the custody of the petitioners, could not be considered to be neglected or dependent at the time the petition was filed, and that the case is analogous to State v. Gross, 173 Neb. 536, 114 N. W. 2d 16. In that case, we held that a child may not be declared dependent or neglected for the sole purpose of facilitating adoption proceedings. We do not agree with the construction appellees place on the petition herein. On the facts, this case is more analogous to Jones v. State, 175 Neb. 711, 123 N. W. 2d 633, in which we said: "A child must in fact be dependent and neglected at the time proceedings are instituted to have it declared a neglected and dependent child, or it should be in danger of so becoming in the near future." Here, the McCauleys abandoned the child at birth and have never had its custody. From the allegations of the petition, which must be accepted as true, but which we suggest find support in the evidence adduced in the other case, the McCauleys are unfit to have custody of the child. It does not take a strained construction to infer that the McCauleys have been motivated by a desire to be paid for a relinquishment.

What we said in Jones v. State, *supra,* is applicable to the facts in this case. We determine that Barry Gene McCauley was in danger of becoming a dependent and neglected child in the immediate future if his custody

.was given to the McCauleys, and that the court should take jurisdiction to protect his interests.

It is a fair inference from the record that the petitioners realized the possibility that the relinquishment in the adoption case was invalid. The McCauleys in that case were attempting to secure the custody and control of the infant and the court had determined that their fitness to have such custody and control could not be litigated in that case. Despite the argument of the Mc-Cauleys that this action was initiated solely to facilitate the adoption proceedings, it is apparent to us that it was instituted for the sole purpose of protecting the rights of the infant. When the court takes jurisdiction of a child, that child becomes a ward of the court, and it is the court which will determine what is for the best interest and welfare of the child. It is true the petitioners can show their interest in the child and this may coincide sufficiently with the welfare of the child to determine the issue, but the court's primary consideration will always be the best interest and welfare of the child.

For the reasons given, the special appearance of the McCauleys and the motion to strike the petition should have been overruled. The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.

REVERSED AND REMANDED.

CARTER, J., dissenting.

Eugene E. Stewart and Carolyn A. Stewart brought this proceeding in the juvenile court for Dawes County alleging that Barry Gene McCauley, born on April 28, 1962, had been in their custody since a few hours after his birth, that they had furnished him adequate care, food, clothing, shelter, love, and affection, with the permission and consent of his parents, and that the child's parents are now threatening to take the custody of the child, which the Stewarts alleged would not be for the best interest of the child. The petition alleged the re-

fusal of the county attorney to bring the action, or to consent to its bringing by a reputable person within the county, as required by section 43-205, R. S. Supp., 1963.

Sections 43-201 to 43-220, R. R. S. 1943, as amended, constitute an exclusive act which authorizes proceedings thereunder only by the county attorney or a reputable person having the consent of the county attorney. Without such consent a private litigant has no authority to bring the action. The intention of the Legislature to so limit the bringing of such actions is made clear by section 43-201, R. S. Supp., 1963, wherein it is stated in part: "As used in sections 43-201 to 43-220, unless the context otherwise requires: (1) This act shall be construed as referring exclusively to sections 43-201 to 43-220; * * *." I submit that an action brought under this act by someone other than the county attorney in the absence of a pleading that it was consented to by the county attorney is fatally defective. The trial court so found and sustained the motion of the county attorney to strike the petition, the motion being properly treated as a demurrer, and dismissed the action when plaintiffs elected to stand on the petition. I submit that the action of the trial court was correct and that its judgment should be affirmed.

The plaintiffs contend that the county attorney was disqualified by interest, with which I fully agree. It is my position, however, that such a situation does not authorize the beginning of the action without compliance with the terms of the statute. The plaintiffs should have proceeded to obtain the consent of an acting county attorney and pleaded it in their petition, and, in failing to do so, a cause of action could not be stated. The statute does not contemplate the commencement of such an action and the obtaining of subsequent consent. The condition is precedent to the bringing of any action at all.

"One whose authority to prosecute an action is limited by statute must plead facts which bring him within such statutory limitations." Sommerville v. Board of

County Commissioners, 117 Neb. 507, 221 N. W. 433. The act before us was intended to authorize the state by the county attorney, or someone to whom he gave consent, to bring an action under this section. The action is granted by statute and was not existent at common law. In Duhrkopf v. Bennett, 108 Neb. 142, 187 N. W. 813, we said: "Where a right has been created by statute which did not exist at the common law, the legislature may impose restrictions thereon, and the conditions so imposed qualify and are an integral part of the act and must be fully complied with in the manner therein prescribed." In Swaney v. Gage County, 64 Neb. 627, 90 N. W. 542, we said: "It must be conceded that the legislative body, which created the right of action, had absolute power to determine the conditions under which it must be brought, * * *. As we have heretofore said, this was new and independent legislation, and the act was complete in itself. It established the rule for the class of cases to which it relates." In Clay County v. Bottorf, 166 Neb. 262, 88 N. W. 2d 898, we said: "The statute above quoted is indispensable to the cause of action asserted by appellee. It creates a right that did not exist at common law. It requires as a condition precedent to the existence and enjoyment of the right that the incompetent be possessed of an estate * * *. It is by the statute made a condition of the right and of the remedy. Appellee could only allege a cause of action by asserting that the requirements of the condition implicit in the statute did exist * * *." See, also, County of Keith v. Creamer, 170 Neb. 362, 102 N. W. 2d 632; County Board of Platte County v. Breese, 171 Neb. 37, 105 N. W. 2d 478.

Unless the statute is followed as enacted, the limitation imposed by the Legislature on the bringing of such actions becomes a meaningless restriction and opens the door to a multitude of unauthorized proceedings. It was the intent of the Legislature that the act was for the benefit of the state in protecting neglected, dependent,

or delinquent children, and not for the benefit of private litigants. To hold, as does the majority opinion, the statute is extended by judicial pronouncement to bring private litigants within its scope. It creates a class not authorized by the act.

The majority opinion states that section 43-205, R. S. Supp., 1963, was not intended to make the county attorney the judge with the final decision, but was intended as a check on its indiscriminate exercise. I submit that the statute is subject to no such construction. It means just what it says and nothing more. It in fact provides that no action may be brought unless the conditions precedent contained therein have been met. It authorizes the bringing of the action by the state through the county attorney or a reputable person to whom consent is given by the county attorney. Unless the conditions are met, no authority exists for bringing the action.

I am in accord with the statement of the majority that when the court takes jurisdiction of a child in a proceeding properly before it, the child becomes a ward of the court. But an infant cannot become the ward of a court where there is nothing before it, including a petition that does not state a cause of action under the applicable statutory authority. Such a situation is no different than where the court arbitrarily undertakes to deal with an infant without a pleading of any kind before it. The term "ward of the court" has been applied to many classes of people other than children, including Indians, seamen, incompetents, and others. But none becomes a ward of the court until the court's jurisdiction is invoked by a proper pleading. It is a fallacy, indeed, to contend in such cases that the jurisdiction of a court attaches ipso facto without a proper pleading and that a court may grant relief on some theory outside the usual methods of bringing issues before the court. The court may not exercise its powers over a ward of the court until such time as the ward has been brought within its

jurisdiction and its power to adjudicate properly invoked. Where an action grounded on statute is not in compliance with its terms, the power of the court to adjudicate does not exist and the action is for dismissal.

It seems clear that the district court for Dawes County has no pleading before it that states a cause of action, for the simple reason that it was not brought by the state in the manner and subject to the restrictions imposed by the statute. The majority opinion purports to supply a cause of action in a situation which the Legislature does not permit. The equities that may exist cannot be used to escape the limitations imposed by the legislative authority. The statute must be strictly construed and applied, since the statute is the right, it being in derogation of the common law.

The majority opinion purports to invest jurisdiction in the district court under a situation which the statute by plain language does not permit. Its conclusion appears to be based on the unsupportable theory that the end justifies the means. If such statutes are to be extended under the guise of judicial construction to mean something not authorized, the whole principle of statutory construction will be convulsed into inconsistency, instability, and chaos. The fact that a litigant chose a wrong remedy, or one not available to him, is no justification for creating a nonexistent remedy to meet the exigencies of the situation. It is the function of courts to declare the law as it is, not that which it wishes that it were.

POLLOCK and SIDNER, District Judges, join in this dissent.