In re Interest of W.C.O., a child under 18 years of age. State of Nebraska, appellee, v. W.D.O., appellant.
370 N.W.2d 151

Filed July 5, 1985.   No. 84-941.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays, for appellant.

Michael G. Heavican, Lancaster County Attorney, and Jan W. Sharp, for appellee.

Margene M. Timm, guardian ad litem.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

The natural father of the child involved in this case appeals from an order entered by the separate juvenile court of Lancaster County, Nebraska, on November 14, 1984, in which the court found that W.C.O. was a child lacking proper parental care by reason of the faults and habits of his father, pursuant to Neb. Rev. Stat. § 43-247 (Cum. Supp. 1982), and from the order of disposition dated December 4, 1984, placing custody of the minor child with the natural mother. We affirm.

On September 28, 1984, a petition was filed in the separate juvenile court of Lancaster County, Nebraska, pursuant to § 43-247(3)(a), charging that by reason of the faults and habits of his father, W.C.O. was a minor child subject to the jurisdiction of the separate juvenile court.

On November 13, 1984, an adjudication hearing was held by the separate juvenile court of Lancaster County, Nebraska, at which time evidence was adduced. The evidence disclosed that on September 5, 1984, W.C.O.'s father was at home alone with W.C.O. and two boys for whom W.C.O's mother was babysitting. W.C.O. was 17 months old at this time. While the mother was gone from the home, the father committed an act of fellatio on one of the children, a boy 4 years old. As a result of the incident, the father was charged with first degree sexual assault. Although the father denied that any such incident had occurred, there was testimony from two of the arresting officers that the father had confessed to them that the act had been committed. The separate juvenile court found that it did have jurisdiction over the minor child by reason of the child being a juvenile who lacked proper parental care by reason of the fault and habits of his parent, as provided in § 43-247(3)(a).

Final disposition was continued until December 4, 1984.

On December 4, 1984, a dispositional hearing was held, at which time the minor child, W.C.O., was placed in the custody of his mother. His father was ordered not to be alone with the child at any time. At the dispositional hearing a report prepared by Child Protective Services was offered into evidence. The report found that W.C.O. was at risk unless the father successfully completed a counseling program, and therefore recommended that the minor child remain in the custody of his mother and that his father obtain psychological evaluation by a therapist qualified and experienced in working with sexual abuse offenders.

The father appeals to this court, essentially alleging that the separate juvenile court erred in finding that the minor child was a child lacking in proper parental care by reason of the fault or habits of his father, because there was no evidence that the minor child was either aware of or affected by his father's alleged inappropriate sexual contact with another child. We believe that the appellant misconceives the purpose and effect of the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 to 43-2,129 (Cum. Supp. 1982). Under the provisions of § 43-247 the juvenile court has jurisdiction of any juvenile "who lacks proper parental care by reason of the fault or habits of his parent." The question that we must therefore address is whether a child lacks proper parental care by reason of the fault or habits of his parent if his parent has committed a sexually abusive act upon another minor child. The danger of permitting such a father to remain in a position where he may be alone with his own minor child should be obvious. It is not the intent or purpose of the juvenile code to require the separate juvenile court to wait until disaster has befallen a minor child before the court may acquire jurisdiction. If it is reasonable to assume that injury will occur absent action by the court, then the court may assume jurisdiction and act accordingly. In *Jones v. State*, 175 Neb. 711, 717, 123 N.W.2d 633, 637 (1963), we said: " 'A child must in fact be dependent and neglected at the time proceedings are instituted to have it declared a neglected and dependent child, *or it should be in danger of so becoming in the near future.*' " (Emphasis supplied.) Furthermore, in *Stewart v.*

*McCauley*, 178 Neb. 412, 415, 133 N.W.2d 921, 924 (1965), we noted: "The jurisdiction of the state arises out of the power that every sovereignty possesses as parens patriae to every child within its borders to determine the status and custody that will best meet its needs and wants . . . ." We went on to say in *Stewart* at 418, 133 N.W.2d at 925:

> The juvenile court is a product of the solicitude of the law for the welfare of infants. Its powers and duties are described more or less in detail in our statutes, and because of their humanitarian and beneficient [sic] purpose, they should be liberally construed to the end that their manifest purpose may be effectuated to the fullest extent compatible with their terms.

The report filed by Child Protective Services at the dispositional hearing merely supports the juvenile court's conclusion. The report makes clear that in the opinion of the agency the father poses a risk to the minor child and should not be permitted to be alone with the minor child unless and until psychological evaluation has been conducted and the treatment prescribed taken. While the State did not produce any evidence regarding the risk to the minor child at the adjudication hearing, the court could consider the fact that the father committed a sexual act upon a 4-year-old child and therefore was likely to commit a similar act upon his own minor child. As we noted in *Mullikin v. Lutkehuse*, 182 Neb. 132, 135, 153 N.W.2d 361, 364 (1967):

> Under the evidence in this case, the fitness of the mother and grandmother is of such a nature as to require the removal of the child from their care and custody for the best interests of the child. The environment in which this little girl would be raised would be such as to risk the serious effects of an unmoral climate. The placing of the child where her surroundings, teaching, and care would be conducive to proper training, including the establishment of adequate physical, mental, and moral standards, is, as the trial court found, to the best interests of the child.

Even if the evidence adduced at the adjudication hearing was insufficient to establish that the child was in physical danger from the father by reason of the father's fault or habits, it was

more than sufficient to establish that unless this problem was cured the child was likely to be raised in an immoral atmosphere in which, at a minimum, the child would be taught that such acts as performed by the father were not either immoral or illegal. The juvenile court was correct in assuming jurisdiction over the child and entering the temporary order. The judgment is affirmed.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I must respectfully dissent from the majority opinion in this case. I do so reluctantly because I recognize that we are dealing with the welfare of a young child. Nevertheless, I believe that courts must be bound by their own rules and cannot choose to ignore those rules even where by doing so the court may be accomplishing some good.

With the exception of limited jurisdiction granted to the Supreme Court by the Constitution of the State of Nebraska, see Neb. Const. art. V, § 2, and the chancery and common-law jurisdiction granted to the district courts by the Nebraska Constitution, see Neb. Const. art. V, § 9, all courts in Nebraska are limited in their jurisdiction to those matters given to them by the Legislature. Without that authority the courts are not free to act. The juvenile court is even more limited in its jurisdiction, relying, as the court did in this case, upon the occurrence of an event or the creation of a situation as described in Neb. Rev. Stat. § 43-247 (Cum. Supp. 1982). As noted in 20 Am. Jur. 2d *Courts* § 91 at 451 (1965): "A court possesses only such jurisdictional powers as are directly, or indirectly, expressly or by implication, conferred upon it by the constitution or legislation of the sovereignty on behalf of which it functions . . . ." The Legislature, within constitutional limitations, can fix and circumscribe the jurisdiction of the various courts of this state, and where the Legislature has not granted such authority, the courts are not free to act. See, *Bullington v. Angel*, 220 N.C. 18, 16 S.E.2d 411 (1941); *Coonradt et al. v. Sailors*, 186 Tenn. 294, 209 S.W.2d 859 (1948).

In the instant case the juvenile court took jurisdiction over the minor child by reason of § 43-247(3)(a), which required the court to find that the minor child lacked "proper parental care

by reason of the fault or habits of his . . . parent." An examination of the testimony offered at the adjudication hearing simply does not support the claim that the minor child lacked proper parental care by reason of the fault or habits of his parent. All that the evidence introduced at the adjudication hearing established was that on one isolated occasion, the father committed an act which is a violation of state law. To be sure, the act was depraved and without excuse. It was clearly an act for which the father should be prosecuted and punished. But the fact that the father has committed a criminal act does not establish that the child is without proper parental care, absent further evidence. There could have been evidence introduced at the adjudication hearing, as there was at the dispositional hearing, to support the claim that because the father had committed this depraved act upon another minor child, there was a likelihood that the father would commit a similar act upon his own minor child. With that evidence there would have been no difficulty in the juvenile court's acquiring jurisdiction. The difficulty, however, is that the State, for whatever reason, chose not to introduce such evidence and, instead, apparently relied upon the separate juvenile court's taking judicial notice of a fact which was not a matter of common knowledge. The evidence indicated that the minor child was in no manner affected. While the State would argue that it naturally follows that if a parent commits an act of fellatio on another minor child, he will commit such an act on his own minor child, there simply is no evidence to support that claim. One may just as effectively argue that a parent may treat his own children better than he treats the children of others.

The majority has cited the case of *Stewart v. McCauley*, 178 Neb. 412, 133 N.W.2d 921 (1965), in support of its position. In that very same case, Justice Carter, writing in dissent, made an interesting observation. He said at 422, 133 N.W.2d at 927, " 'Where a right has been created by statute which did not exist at the common law, the legislature may impose restrictions thereon, and the conditions so imposed qualify and are an integral part of the act and must be fully complied with in the manner therein prescribed,' " citing *Duhrkopf v. Bennett*, 108 Neb. 142, 187 N.W. 813 (1922). He further noted at 423-24, 133

N.W.2d at 928:

> The court may not exercise its powers over a ward of the court until such time as the ward has been brought within its jurisdiction and its power to adjudicate properly invoked. Where an action grounded on statute is not in compliance with its terms, the power of the court to adjudicate does not exist and the action is for dismissal.

I am inclined to agree with Justice Carter. The State may well have been able to produce the necessary evidence. But when it fails to do so, the court should not fill the holes. If we are indeed to remain a country of laws and not a country of unbridled authority, then the State must be compelled in each instance to meet its burden or the citizen must be free of governmental restraint, no matter how compelling the reasons to do otherwise. The record in this case was simply insufficient at the adjudicative hearing, and the motion to dismiss made at the close of that hearing should have been granted. I would have reversed.